SPENCER v CITIZENS INSURANCE COMPANY

Docket No. 208950. Submitted July 14, 1999, at Detroit. Decided January 7, 2000, at 9:10 A.M.

John Spencer brought an action in the St. Clair Circuit Court against Citizens Insurance Company and Allstate Insurance Company, seeking a determination which insurance company was responsible for paying automobile no-fault insurance benefits to him. The plaintiff was injured when an automobile that he had been pushing in a snow-covered parking lot knocked him down and ran over his wrist and ankle. The automobile then sped away. Because the plaintiff did not have an automobile no-fault policy, did not live in the household of a spouse or relative who had an automobile no-fault policy, and could not identify the owner or the driver of the automobile that had run over him, the Assigned Claims Facility directed Citizens to provide no-fault benefits to the plaintiff. Citizens paid no-fault benefits to the plaintiff pursuant to the assigned-claims provisions of the no-fault act until after it learned that the plaintiff had discovered and sued the owner of the vehicle that had allegedly struck him and that the vehicle was insured by Allstate. Believing that the plaintiff's identification of a higher priority insurer, Allstate, relieved it of its obligation to continue payment pursuant to the assigned claim, Citizens ceased paying benefits to the plaintiff. The plaintiff's suit against the owner of that vehicle was subsequently settled by Allstate's payment to the plaintiff of an amount equal to the third-party recovery limit of the Allstate policy. The plaintiff moved for summary disposition against Citizens, arguing that Citizens had the duty to continue to pay benefits to him and that Citizens could then seek indemnification from Allstate. Citizens argued that the plaintiff's identification of the insurer of the vehicle that had hit him relieved Citizens of its obligation to pay benefits pursuant to the assigned claim. The court, Daniel J. Kelly, J., granted summary disposition for the plaintiff, finding that Citizens had a continuing obligation to pay benefits as the assigned-claim insurer, and dismissed the claim against Allstate. Although there was an indication at the hearing of plaintiff's motion that Citizens would be ordered to pay benefits retroactive to the date that it ceased paying benefits, the order entered by the court did not require Citizens to pay any retroactive benefits. The

plaintiff thereafter moved to amend the order of judgment to require Citizens to pay to plaintiff those benefits that had not been paid during the period between the date that Citizens ceased paying benefits and the date the order of judgment was entered. The court denied the motion to amend, holding that the court's prior order of judgment had determined only the issue of Citizens' obligation to continue to pay benefits and that, absent a stipulation of damages, a trial with respect to the amount of any alleged unpaid benefits would be necessary. Subsequently, Citizens requested that the court reconsider its prior order of judgment and moved for summary disposition, reiterating its position that identification of Allstate as a higher priority insurer relieved it of its obligations under the assigned claim. The court granted summary disposition for Citizens, holding that Allstate was the insurer with the highest priority and that Citizens, as an assigned-claim insurer, was thereby released from further liability for paying benefits to the plaintiff. The plaintiff appealed.

The Court of Appeals *held*:

1. Because the plaintiff did not have his own no-fault insurer, was not domiciled with a spouse or relative who had a no-fault insurer, and was not the occupant of a motor vehicle at the time he was injured, he was entitled to no-fault coverage under the policy of the owner or the driver of the vehicle involved in the accident causing his injury. However, because at the time the plaintiff first sought benefits the identity of the owner or the driver of the vehicle that caused the plaintiff's injuries was not known, the plaintiff was entitled to benefits pursuant to the assigned-claims provision of subsection 1 of § 3172 of the no-fault act, MCL 500.3172(1); MSA 24.13172(1). Because the assignment of Citizens as the insurer to pay benefits to the plaintiff was based on the inability to identify the owner or the driver of the involved vehicle, the provisions of subsection 3 of § 3172, MCL 500.3172(3); MSA 24.13172(3), which relate to the situation where an assignment of a claim is the result of a dispute between two or more insurers, are inapplicable in this matter.

2. There is no language in the assigned-claims provisions of the no-fault act that specifically relieves an insurer who has been assigned a claim of its obligation to continue to pay benefits pursuant to the assignment after the discovery of another applicable insurer. Absent legislative relief from a continuing obligation to pay benefits under such circumstances, such relief will not be judicially inferred.

3. Section 3175, MCL 500.3175; MSA 24.13175, clearly requires that an insurer that has been assigned a claim promptly pay the

claims submitted by its assigned-claim insured; however, that provision also clearly gives the assigned-claim insurer the right to seek reimbursement or indemnity from third parties. Although subsection 2 of § 3172, MCL 500.3172(2); MSA 24.13172(2), allows the personal protection benefits payable through the assigned-claims plan to be reduced to the extent that benefits covering the same loss are available from other sources, there is nothing in the language of that subsection to suggest that an assigned-claim insurer will be completely relieved of its responsibility to pay benefits should another source of benefits be discovered.

4. The assigned-claims provisions of the no-fault act reflect the general intent of the no-fault act to provide the victims of automobile accidents with an assured, adequate, and prompt source of benefits covering certain economic losses, while allowing insurers to determine among themselves their respective ultimate liability for payment. Accordingly, the trial court erred in granting summary disposition for Citizens, thereby relieving Citizens of its obligation to pay benefits to the plaintiff pursuant to the assigned claim. The matter must be remanded for reinstatement of the prior order of summary disposition for the plaintiff and for further proceedings regarding damages and any setoffs applicable pursuant to MCL 500.3172(2); MSA 24.13172(2).

Reversed and remanded.

1. INSURANCE — NO-FAULT — ASSIGNED CLAIMS — ASSIGNED-CLAIMS INSURERS — OBLIGATION TO PAY BENEFITS.

The assigned-claims provisions of the automobile no-fault act clearly require that an insurer that has been assigned a claim promptly pay the claims submitted by its assigned-claim insured; however, an assigned-claim insurer is given the right to seek reimbursement or indemnity from third parties; there is no language in the assigned-claims provisions of the no-fault act that specifically relieves an assigned-claim insurer of its obligation to continue to pay benefits pursuant to the assignment after another applicable insurer has been discovered; absent legislative relief from a continuing obligation to pay benefits pursuant to an assigned claim where another applicable insurer has been discovered, such relief will not be judicially inferred (MCL 500.3175; MSA 24.13175).

2. INSURANCE — NO-FAULT — ASSIGNED CLAIMS — STATUTORY INTENT — UNIDENTIFIED VEHICLE OWNERS OR DRIVERS — ASSIGNED-CLAIMS INSURERS — OBLIGATION TO PAY BENEFITS.

The assigned-claims provisions of the no-fault act reflect the general intent of the no-fault act to provide the victims of automobile accidents with an assured, adequate, and prompt source of benefits

covering certain economic losses, while allowing insurers to determine among themselves their respective ultimate liability for payment; the obligation to pay benefits to an assigned-claim insured by an insurer that has been assigned a claim because of the inability to identify the owner or the driver of the vehicle involved in an accident remains with the assigned-claim insurer even if an insurer of the vehicle's owner or driver is subsequently identified; the assigned-claim insurer may seek indemnity or reimbursement or may set off against its liability any like benefits paid by the insurer of the vehicle (MCL 500.3172[2], 500.3175; MSA 24.13172[2], 24.13175).

*Fraser & McHugh, P.C.* (by *Stuart A. Fraser* and *Timothy R. Noonan*), for the plaintiff.

*Amselmi, Mierzejewski & Ledwidge, P.C.* (by *Paul M. Ledwidge*), for the defendant.

Before: GRIBBS, P.J., and SMOLENSKI and GAGE, JJ.

GAGE, J. Plaintiff appeals as of right from the trial court's order granting defendant summary disposition pursuant to MCR 2.116(C)(10) in this insurance dispute. We reverse and remand.

On March 4, 1994, plaintiff became the victim of a hit-and-run automobile accident. Plaintiff went to the aid of a vehicle that was stuck in the snow in a city of Port Huron parking lot. According to a police report, the vehicle was positioned "with the front end . . . up against a telephone pole that was being used as a barrier of the parking lot and was laying [sic] horizontal on the ground along the sidewalk." From the vehicle's front, plaintiff successfully pushed the vehicle backwards. The vehicle's driver then accelerated forward, driving the front tires over the telephone pole. As the vehicle passed over the telephone pole, the pole lodged beneath it. The vehicle's motion caused the telephone pole to swing outward toward-plaintiff, striking plaintiff's legs. The blow knocked plaintiff to

the ground in the path of the forward-moving vehicle, which continued forward and ran over plaintiff's left wrist and ankle. Having done its damage, the vehicle sped away, its driver unidentified.

At the time of the accident, plaintiff did not have a no-fault insurance policy, nor did he reside in a household with someone who had a no-fault policy. Because plaintiff could not identify the vehicle's owner or driver, the Assigned Claims Facility directed defendant to provide plaintiff benefits. In the fall of 1995, defendant discovered that plaintiff had sued John Atkinson, the owner of the vehicle that allegedly struck him, and that Allstate Insurance Company had issued Atkinson a no-fault policy. Plaintiff settled his suit against Atkinson for $20,000, which amount represented the third-party recovery limit under Atkinson's Allstate no-fault policy. In December 1995, defendant ceased paying plaintiff assigned-claims benefits because it believed that plaintiff had identified a higher priority insurer.

In January 1996, plaintiff filed the instant action against both defendant and Allstate, requesting that the court ascertain the responsible insurer. Plaintiff moved for summary disposition against defendant pursuant to MCR 2.116(C)(10), arguing that defendant should continue to provide plaintiff assigned benefits and that defendant could seek indemnification from Allstate.[1] Defendant generally argued that plaintiff's identification of Atkinson's insurer relieved it from its assigned-claim obligation. On September 12, 1996, the trial court granted plaintiff's motion against defendant

---

[1] Allstate agreed that defendant was responsible for continuing benefit payments. Allstate further indicated its belief that any claim plaintiff may have against it was barred by the statute of limitations.

and dismissed Allstate. Though not reflected in the trial court's written order, the court at the hearing on plaintiff's motion indicated that it would order that defendant continue paying benefits retroactive to December 14, 1995.

In October 1996, plaintiff moved for an amendment of judgment, arguing that defendant had not complied with the court's order to provide plaintiff retroactive benefits and requesting a court order that defendant immediately give plaintiff the benefits that it had unexplainedly failed to provide. The court denied plaintiff's motion on the basis that while the prior order had determined the issue of defendant's liability, no judgment existed that the court could amend. The court indicated that absent the parties' stipulation with respect to damages, a trial would be necessary.

In August 1997, defendant moved for summary disposition pursuant to MCR 2.116(C)(10), requesting that the court reconsider its earlier order and repeating its position that the identification of Allstate as an applicable insurer terminated defendant's assigned-claim obligation. Defendant maintained that plaintiff's and Allstate's settlement of plaintiff's action against Atkinson evidenced Allstate's status as an identifiable, higher priority insurer, that plaintiff had admitted in his deposition testimony that he had settled with Atkinson's insurer, and that the expiration of the period of limitation with respect to any first-party claim that plaintiff may have had against Allstate did not obligate defendant to continue making assigned-claim benefit payments. Plaintiff requested a default judgment against defendant in an amount of damages

to be determined after the hearing of testimony in that respect.

The trial court opined that Allstate did represent a higher priority insurer than defendant and that plaintiff's failure to identify Allstate as an applicable insurer within the period of limitation for making a claim for first-party coverage did not obligate defendant, the assigned insurer, to continue paying benefits.

Plaintiff's Motion for Summary Disposition to receive benefits under the Assigned Claims Plan from Citizens was filed on April 4, 1996. At this time there still existed a dispute between Allstate and Citizens as to which insurer was liable for Plaintiff's first party claim, thus invoking the plain language of the statute and obligating Citizens to continue making payments to Plaintiff. However, Plaintiff's suit against Mr. Atkinson was settled by the parties in early 1997, with Allstate paying Mr. Atkinson's policy limits for such third party claims. This Court can only reasonably assume that Allstate's coverage of this third party claim was an acknowledegment [sic] of their liability for Plaintiff's first party claim. It is obvious that Allstate at some point became aware that Mr. Atkinson was in fact the driver of the hit-and-run vehicle, and that therefore its obligation rested with the payment of Plaintiff's claim on behalf of Mr. Atkinson. Therefore, the Court finds that there is currently no dispute between Citizens and Allstate regarding which insurer is primarily liable for Plaintiff's first party benefits, for it appears that Allstate's actions warrant a finding that, in the absence of the statute of limitations, Allstate would be compelled to make payment of such benefits to Plaintiff.

\*        \*        \*

The Court is of the opinion that in such a case the assigned insurer is not required to make any further payments to the claimant. It would be both inequitable and against the policy of the statute to compel Citizens to continue its payment of benefits to Plaintiff in this situation, while Allstate is protected from liability by the expiration of

the statutory period for bringing a claim. Such a determination would also defy logic by allowing an insurer of the highest priority to be free from liability while simultaneously directing the insurer of last resort to continue payments. In such a scenario not only would Citizens be liable for payments made during the period when other insurance coverage is not known to exist, but it would also be forced to pay even after higher-priority benefits have been discovered and denied to the claimant. This is a result which could not possibly have been anticipated by either the Legislature or the Courts. Therefore, the Court finds Citizens' argument to be compelling, and holds that it is not liable for further payment of benefits to Plaintiff.

Accordingly, the trial court granted defendant's motion.[2]

Plaintiff sought reconsideration, contending that no evidence showed Atkinson's involvement in plaintiff's accident or, therefore, Allstate's identity as a higher priority insurer. The court denied plaintiff's motion, finding that Allstate's entry into a settlement with plaintiff constituted its admission that Atkinson was the hit-and-run driver and that settlement language disclaiming Allstate's liability could not be enforced against defendant, which did not represent a party to the settlement agreement.

On appeal, plaintiff challenges the trial court's order granting defendant summary disposition. This Court reviews de novo the trial court's grant or denial

---

[2] To the extent that plaintiff suggests the trial court erroneously granted summary disposition to one party, only later to revisit the issue and grant summary disposition to the opposing party, we note that this procedure alone does not represent error. No court rule prohibits the trial court from revisiting an issue in this manner, and the law of the case doctrine does not apply to the trial court's original determination to grant plaintiff summary disposition, thus prohibiting the court from revisiting that issue later in the same case. *In re Forfeiture of $19,250*, 209 Mich App 20, 30; 530 NW2d 759 (1995).

of summary disposition to determine whether the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). In evaluating a summary disposition motion brought pursuant to MCR 2.116(C)(10), we consider affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. When the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. *Maiden, supra* at 119-120.

Our resolution of this case demands that we analyze statutory provisions involving the assigned-claims plan. The following principles guide our analysis:

"The primary rule of statutory construction is to determine and effectuate the intent of the Legislature through reasonable construction in consideration of the purpose of the statute and the object sought to be accomplished. Where a statute is clear and unambiguous, judicial construction is precluded. If judicial interpretation is necessary, the Legislature's intent must be gathered from the language used, and the language must be given its ordinary meaning. In determining legislative intent, statutory language is given the reasonable construction that best accomplishes the purpose of the statute." [*Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998), quoting *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 219 Mich App 165, 169-170; 555 NW2d 510 (1996) (citations omitted).]

Statutory interpretation also represents a question of law that we review de novo. *Michigan Municipal Liability & Property Pool v Muskegon Co Bd of Co*

*Rd Comm'rs*, 235 Mich App 183, 189; 597 NW2d 187 (1999).

The assigned-claims provisions pursuant to which plaintiff began receiving benefits from defendant constitute components of Michigan's no-fault act, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.* The no-fault act governs recovery for accidental bodily injuries arising out of the ownership, operation, maintenance, or use of a motor vehicle. MCL 500.3105; MSA 24.13105; *Belcher v Aetna Casualty & Surety Co*, 409 Mich 231, 242-243; 293 NW2d 594 (1980).

> Enactment of the Michigan no-fault insurance act signalled a major departure from prior methods of obtaining reparation for injuries suffered in motor vehicle accidents. The Legislature modified the prior tort-based system of reparation by creating a comprehensive scheme of compensation designed to provide sure and speedy recovery of certain economic losses resulting from motor vehicle accidents. Under this system, losses are recovered without regard to the injured person's fault or negligence. [*Id.* at 240.]

See also *Shavers v Attorney General*, 402 Mich 554, 578-579; 267 NW2d 72 (1978) ("The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses."); *Walker v Farmers Ins Exchange*, 226 Mich App 75, 78; 572 NW2d 17 (1997) ("The no-fault insurance act was intended to provide prompt monetary relief for losses sustained in vehicular accidents at the lowest cost to the system and the individual."). "The no-fault act is remedial in nature and is to be liberally construed in favor of persons who are intended to benefit from it." *Putkamer v Transamerica Ins Corp of*

*America*, 454 Mich 626, 631; 563 NW2d 683 (1997); see also *Gobler v Auto-Owners Ins Co*, 428 Mich 51, 61; 404 NW2d 199 (1987).

Generally, when an injured person is insured or where an injured person's family member is insured under a no-fault insurance policy, the injured person seeks benefits from his own insurer. *Belcher, supra* at 252-253. Subsection 3114(1) of the no-fault act, MCL 500.3114(1); MSA 24.13114(1), contemplates that an individual injured in a motor vehicle accident will obtain personal protection benefits under a no-fault policy that covers "the person named in the policy, the person's spouse, and a relative of either domiciled in the same household." Subsection 3115(1) of the no-fault act, MCL 500.3115(1); MSA 24.13115(1), provides that an individual not covered by an applicable policy who suffers injury "while not an occupant of a motor vehicle" is entitled to coverage pursuant to the policy of the owner or the operator of the vehicle involved in an accident. Under the no-fault act, the Assigned Claims Facility represents the insurer of last priority. *Hunt v Citizens Ins Co*, 183 Mich App 660, 665; 455 NW2d 384 (1990).

Subsection 1 of § 3172, MCL 500.3172(1); MSA 24.13172(1), describes the situations in which an injured person may receive assigned-claim benefits:

> A person entitled to a claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle in this state may obtain personal protection insurance benefits through an assigned claims plan if no personal protection insurance is applicable to the injury, no personal protection insurance applicable to the injury can be identified, the personal protection insurance applicable to the injury cannot be ascertained because of a dispute between 2 or more automobile

insurers concerning their obligation to provide coverage or the equitable distribution of the loss, or the only identifiable personal protection insurance applicable to the injury is, because of financial inability of 1 or more insurers to fulfill their obligations, inadequate to provide benefits up to the maximum prescribed. In such case unpaid benefits due or coming due are subject to being collected under the assigned claims plan, and the insurer to which the claim is assigned, or the assigned claims facility if the claim is assigned to it, is entitled to reimbursement from the defaulting insurers to the extent of their financial responsibility.

In this case, plaintiff neither possessed his own no-fault policy nor resided with a relative having a no-fault policy, as contemplated by § 3114. Furthermore, although plaintiff would have been entitled to coverage under the vehicle owner's or operator's policy pursuant to § 3115, at the time of the accident and for some time thereafter, the identities of the owner and driver of the vehicle that struck plaintiff remained unknown. Thus, plaintiff qualified to receive benefits from the Assigned Claims Facility because no personal protection insurance applicable to plaintiff's injury could be ascertained. MCL 500.3172(1); MSA 24.13172(1).

A reading of the trial court's October 24, 1997, opinion indicates the court's belief that subsection 3172(3), MCL 500.3172(3); MSA 24.13172(3) represented the basis for involving the Assigned Claims Facility, and plaintiff argues in his brief on appeal that pursuant to this subsection, "when there is a dispute between two or more insurers regarding a claim, that claim should be assigned to the assigned claims facility, and the insurer assigned by the assigned claims facility *should pay* the claimant's benefits."

(Emphasis in original.) The trial court rejected plaintiff's argument to this effect, apparently on the basis that no dispute between two or more insurers existed and that, therefore, subsection 3172(3) was not controlling, in light of plaintiff's settlement with Allstate. Subsection 3172(3) provides in relevant part as follows:

If the obligation to provide personal protection insurance benefits cannot be ascertained because of a dispute between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss, and if a method of voluntary payment of benefits cannot be agreed upon among or between the disputing insurers, all of the following shall apply:

(a) The insurers who are parties to the dispute shall, or the claimant may, *immediately notify the assigned claims facility* of their inability to determine their statutory obligations.

(b) *The claim shall be assigned by the assigned claims facility to an insurer* which shall immediately provide personal protection insurance benefits to the claimant or claimants entitled to benefits.

(c) An action shall be immediately commenced on behalf of the assigned claims facility by the insurer to whom the claim is assigned in circuit court for the purpose of declaring the rights and duties of any interested party.

\*     \*     \*

(f) After hearing the action, the circuit court shall determine the insurer or insurers, if any, obligated to provide the applicable personal protection insurance benefits . . . and shall order reimbursement to the assigned claims facility from the insurer or insurers to the extent of the responsibility as determined by the court. [Emphasis added.]

The clear language of subsection 3172(3) envisions that a dispute between two or more insurance compa-

nies concerning coverage of a particular claim may form the basis for an initial submission of the claim to the Assigned Claims Facility. However, because the basis for the Assigned Claim Facility's involvement in the instant case arose out of the inability to identify an applicable insurance policy, and not a dispute between two or more insurers, subsection 3172(3) does not control the outcome of this case. Thus, while the parties spend some time arguing whether the trial court properly found on the basis of plaintiff's settlement with Allstate that Allstate qualified as the highest priority insurer and that no dispute between two insurers existed in this case, we need not resolve this particular dispute. For purposes of our analysis, we will assume that Allstate represents the highest priority insurer.[3]

The determinative issue then becomes whether any provision of the no-fault act permits defendant, the assigned-claim insurer, to cease paying assigned-claim benefits in the event it subsequently discovers a higher priority insurer. For several reasons, we con-

---

[3] Therefore, we likewise need not address defendant's judicial estoppel argument. According to defendant:

> What Plaintiff is attempting to do is assert two inconsistent positions in order to receive a benefit from both positions. The first position being that there is no identifiable coverage available to cover Plaintiff's no-fault benefits. This position is completely inconsistent with the position Plaintiff took in his prior third party litigation against the owner of the involved motor vehicle, John Atkinson. . . . Plaintiff settled this third party automobile negligence case against Mr. Atkinson who was insured by Allstate Insurance.

No apparent dispute exists that plaintiff qualified for assigned-claims benefits on the basis that at the time he sought these benefits he could not identify the owner or operator of the vehicle that struck him. See MCL 500.3172(1); MSA 24.13172(1). Furthermore, as we have stated, the issue whether Allstate represents the highest priority insurer does not determine or affect our analysis of this case.

clude that an assigned-claim insurer that subsequently ascertains a higher priority insurer cannot thereafter simply refuse to pay the assigned-claim insured party further benefits. First, absolutely no language in the assigned-claims provisions of the no-fault act specifically relieves an insurer to whom the Assigned Claims Facility has assigned a claim of its obligation to pay benefits on the basis that the assigned insurer later discovers another applicable insurer. Absent the Legislature's authorization of this particular relief, we will not simply infer its availability as a matter of logic. *In re S R*, 229 Mich App 310, 314; 581 NW2d 291 (1998) ("[N]othing will be read into a statute that is not within the manifest intent of the Legislature as gathered from the act itself.").

Second, we observe that statutory language provides a different recourse, other than unilaterally terminating the assigned-claim insured's receipt of benefits, to an assigned-claim insurer that later discovers a higher priority insurer. Subsection 3175(1), MCL 500.3175(1); MSA 24.13175(1), explains that "[a]n insurer to whom claims have been assigned shall make prompt payment of loss in accordance with this act and is thereupon entitled to reimbursement by the assigned claims facility for the payments and the established loss adjustment cost." Section 3175 further provides in relevant part as follows:

> (2) The insurer to whom claims have been assigned shall preserve and enforce rights to indemnity or reimbursement against third parties and account to the assigned claims facility therefor and shall assign such rights to the assigned claims facility upon reimbursement by the assigned claims facility. This section shall not preclude an insurer from entering into reasonable compromises and settlements with third parties against whom rights to indemnity or reim-

bursement exist. The insurer shall account to the assigned
claims facility for such compromises and settlements. [MCL
500.3175(2); MSA 24.13175(2).]

This statutory language plainly demands that the
assigned-claim insurer must promptly reimburse the
assigned-claim insured for any losses, while providing
for the assigned-claim insurer the right and the duty
to seek reimbursement from and enter settlements
with any appropriate third parties, which category
would include subsequently identified higher priority
insurers. *Auto-Owners Ins Co v Michigan Mut Ins
Co*, 223 Mich App 205, 210; 565 NW2d 907 (1997).
Subsection 3172(2), MCL 500.3172(2); MSA
24.13172(2), contemplates that the assigned-claim
insured might be entitled to benefits from sources
other than the assigned-claim insurer, and thus is con-
sistent with the assigned-claim insurer's obligation to
seek reimbursement from third parties:

> [P]ersonal protection insurance benefits . . . payable
> through an assigned claims plan shall be reduced to the
> extent that benefits covering the same loss are available
> from other sources, regardless of the nature or number of
> benefit sources available and regardless of the nature or
> form of the benefits, to a person claiming personal protec-
> tion insurance benefits through the assigned claims plan.
> This subsection shall only apply when the personal protec-
> tion insurance benefits are payable through the assigned
> claims plan because no personal protection insurance is
> applicable to the injury, no personal protection insurance
> applicable to the injury can be identified, or the only identi-
> fiable personal protection insurance applicable to the injury
> is, because of financial inability of 1 or more insurers to ful-
> fill their obligations, inadequate to provide benefits up to
> the maximum prescribed. As used in this subsection
> "sources" and "benefit sources" do not include the program
> for medical assistance for the medically indigent under the

social welfare act . . . or insurance under the health insurance for the aged act . . . .

Subsection 3172(2) nowhere contemplates, however, that the assigned-claim insurer shall be completely relieved of its responsibility to pay benefits should another benefit source exist.[4]

Last, the public policy behind the no-fault act supports our interpretation of the assigned-claims provi-

---

[4] This Court in *Allen v Farm Bureau Ins Co*, 210 Mich App 591; 534 NW2d 177 (1995),  foreshadowed our instant decision. There, Farm Bureau was assigned the plaintiff's claim through the Assigned Claims Facility because the plaintiff suffered injuries in a motor vehicle accident and could not identify the responsible insurer. The plaintiff eventually filed suit against Farm Bureau when it refused to pay wage-loss benefits. During discovery, Farm Bureau learned that Farmers Insurance Exchange was a higher priority insurer of the driver of the vehicle in which the plaintiff was injured. The plaintiff amended his complaint to add Farmers as a defendant, and Farm Bureau initiated a third-party complaint against Farmers, both occurring more than one year after the plaintiff's accident. *Id.* at 593-594. The trial court granted Farm Bureau's motion for summary disposition regarding the plaintiff's claim on the basis that Farmers qualified as a higher priority insurer, and the parties on appeal did not dispute that ruling. *Id.* at 594. The plaintiff instead challenged the trial court's grant of summary disposition to Farmers, which the court had granted on the basis of the plaintiff's failure to notify Farmers of his claim within the applicable one-year period of limitation. This Court affirmed the trial court's grant of summary disposition to Farmers, likewise concluding that the one-year period of limitation precluded the plaintiff's attempt to sue Farmers. Relevant to the instant case, this Court noted that the plaintiff had not challenged the trial court's grant of summary disposition to Farm Bureau.

> We note that plaintiff does not argue that although Farmers is a higher priority insurer, Farm Bureau, as assignee under the assigned claims plan, was required to pay his wage-loss benefits, to the extent they were justified, and then seek reimbursement from Farmers. Had plaintiff done so, a different result may have obtained. [*Id.* at 600.]

Thus, this Court implied that had the issue been presented, it might have found Farm Bureau under a continuing obligation to provide the plaintiff assigned-claims benefits, while permitting it to seek reimbursement from the higher priority insurer.

sions. As mentioned above, the Legislature intended the no-fault act to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses. *Belcher, supra* at 240; *Shavers, supra* at 578-579; *Walker, supra* at 78. The statutory language of several assigned-claims provisions reflects the goal to provide the injured victim prompt monetary relief. See MCL 500.3172(3)(a), (b); MSA 24.13172(3)(a), (b) (requiring in the event of a dispute between two or more insurers "immediate" notification of the Assigned Claims Facility and that an assigned-claim insurer "shall immediately provide . . . benefits to the claimant"); MCL 500.3174; MSA 24.13174 (requiring that the Assigned Claims Facility "shall promptly assign the claim in accordance with the plan and notify the claimant of the identity and address of the insurer to which the claim is assigned"); and MCL 500.3175(1); MSA 24.13175(1) (requiring that an assigned-claim insurer "shall make prompt payment of loss in accordance with this act"). Defendant's unilateral termination of plaintiff's benefits contravened this public policy favoring plaintiff's prompt benefit recovery.[5]

We note briefly defendant's incorrect suggestion that plaintiff "is not able to collect no-fault benefits from the Assigned Claims Facility" because "the statute of limitations period [with respect to plaintiff's

---

[5] See generally *Allstate Ins Co v Citizens Ins Co of America*, 118 Mich App 594, 603-604; 325 NW2d 505 (1982):

> [W]e note that whenever a priority question arises between two insurers, the preferred method of resolution is for one of the insurers to pay the claim and sue the other in an action of subrogation. This resolution permits the insured person to receive prompt payment while the insurers thereafter dispute their liabilities. [Citation omitted.]

potential first-party claim against Allstate] apparently lapsed before Plaintiff became aware of [Allstate's] identity." Citing *Hunt, supra* at 666, defendant avers that "the Plaintiff's failure to identify the appropriate, and in this case the only priority insurer, prior to the statute of limitations lapsing, does not present a right to make a claim under the Assigned Claims Facility plan." This Court in *Hunt* did not hold that an injured party's failure to ascertain an applicable priority insurer within the period of limitation had any effect whatsoever on the injured party's right to timely claim benefits from the Assigned Claims Facility.[6] Moreover, MCL 500.3174; MSA 24.13174 explains that "[a] person claiming through an assigned claims plan shall notify the facility of his claim within the time that would have been allowed for filing an action for personal protection insurance benefits if identifiable coverage applicable to the claim had been in effect." Because defendant did not challenge below the timeliness of plaintiff's claim through the Assigned Claims Facility and because no record indication exists that plaintiff was tardy in his request for assigned-claim benefits, we decline to further address this issue.[7] See

---

[6] This Court in *Hunt* merely observed that the plaintiff, who had received assigned-claims benefits from the defendant Citizens, could not sue Allstate, a higher priority insurer, because "[t]he fact that Hunt, in the exercise of due diligence, could not or did not identify Allstate as the appropriate insurer is not enough to toll the period of limitation as to Allstate." *Hunt, supra* at 666.

[7] To the extent that defendant continues its argument to the effect that "just because the Plaintiff cannot receive benefits through Allstate Insurance does not make him eligible for benefits with the Assigned Claims Facility plan," we note, as we have previously stated, plaintiff's entitlement to assigned-claims benefits derived from his inability to ascertain at the time he sought benefits the identities of the owner and operator of the vehicle that struck him. MCL 500.3172(1); MSA 24.13172(1).

*Fast Air, Inc v Knight,* 235 Mich App 541, 549; 599 NW2d 489 (1999) (issues not raised in and decided by the trial court are not preserved for appeal).

In conclusion, the trial court erroneously granted defendant summary disposition on the basis that a higher priority insurer had been identified, in contravention of the statutes and public policy involving assigned-claim insurers.

We reverse the trial court's order granting defendant summary disposition and remand for reinstatement of the trial court's previous order granting plaintiff summary disposition and for further proceedings regarding damages and any setoffs applicable pursuant to MCL 500.3172(2); MSA 24.13172(2). We do not retain jurisdiction.