# STATE OF MICHIGAN

# COURT OF APPEALS

BRONSON METHODIST HOSPITAL,

      Plaintiff-Appellant,

v

MICHIGAN ASSIGNED CLAIMS FACILITY,

      Defendant-Appellee.

UNPUBLISHED
February 19, 2015

Nos. 317864, 317866
Kalamazoo Circuit Court
LC No. 2012-000600-NF

Before: BECKERING, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

Bronson Methodist Hospital filed suit after the Michigan Assigned Claims Plan (MACP) (successor to the Michigan Assigned Claims Facility) peremptorily denied its application for assignment of Bronson's claim for payment of medical services provided for the benefit of an injured driver. Before conducting any discovery, the MACP moved to dismiss Bronson's suit, arguing that it had no legal duty to assign Bronson's claim to an insurer. The circuit court granted summary disposition, ruling that Bronson's patient either maintained no-fault insurance from which the patient could seek recovery or the patient illegally failed to maintain insurance, rendering Bronson ineligible for claim assignment.

We hold that the circuit court jumped the gun, as the evidence presented with the MACP's summary disposition motion did not factually support that immediate dismissal is warranted. Accordingly, we vacate the circuit court orders dismissing Bronson's claims and imposing sanctions against it, and remand for further proceedings.

## I. BACKGROUND

On July 6, 2012, Cody Esquivel was involved in a single vehicle accident. Esquivel was intoxicated and peeled out of a driveway, causing his 2002 Jeep to roll over and strike a large landscaping boulder. Although Esquivel was unconscious at the scene and had to be airlifted to Bronson, Esquivel ultimately suffered only a broken finger and bruising on his left flank. The final bill from Bronson for Esquivel's treatment was $21,914.22.

Bronson discharged Esquivel within 24 hours of his accident. No one from the hospital collected information regarding Esquivel's no-fault automobile insurance coverage before he left. Thereafter, the hospital was unable to locate Esquivel. A bill sent to his last known address was returned unopened. Further investigation revealed an updated phone number and address.

-1-

By the time Bronson attempted to contact the phone number it had been disconnected, and mail to the new address went unanswered. Bronson also submitted an investigatory request to the Secretary of State and learned that the vehicle involved in the accident was titled in Esquivel's name.

In the meantime, Bronson filed an application for benefits with the Michigan Assigned Claims Facility, which has since been reconfigured into the Michigan Assigned Claims Plan (MACP).[1] In response to the application question, "On the date of the accident, did you have motor vehicle insurance?" Bronson responded, "unknown." Bronson similarly indicated that it was unknown whether any relatives living with Esquivel or the "driver of the involved motor vehicle" carried no-fault insurance. The MACP denied Bronson's application, asserting "The owner or co-owner of an uninsured motor vehicle . . . involved in an accident is not eligible for benefits."

Bronson subsequently filed a complaint for declaratory judgment and mandamus requiring the MACP to approve the application and assign the claim to a servicing insurer. Bronson contended that the MACP was statutorily obligated to assign the claim pursuant to MCL 500.3172(1), which provides:

> A person entitled to claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle in this state may obtain personal protection insurance [PIP] benefits through the assigned claims plan if [1] no [PIP] is applicable to the injury, [2] no [PIP] applicable to the injury can be identified, [3] the [PIP] applicable to the injury cannot be ascertained because of a dispute between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss, or [4] the only identifiable [PIP] applicable to the injury is, because of financial inability of 1 or more insurers to fulfill their obligations, inadequate to provide benefits up to the maximum prescribed.

Bronson asserted that it had been unable to identify the insurance applicable to the injury, supporting its application for benefits.

In lieu of an answer, the MACP filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10). The MACP speculated that Esquivel, as the vehicle's registered owner, either maintained an insurance policy from which coverage must be sought or he failed to maintain insurance, in which case both he and Bronson would be precluded from seeking no-fault coverage from any insurer pursuant to MCL 500.3113[2] and MCL 500.3173.[3] Under either

---

[1] Bronson was required to file its application with the MACP within one year of Esquivel's accident or forever lose its opportunity to make a claim for reimbursement. See MCL 500.3145(1).

[2] The statute provides that "[a] person is not entitled to paid [PIP] benefits" if "[t]he person was the owner or registrant of a motor vehicle . . . involved in the accident with respect to which the security required by [MCL 500.3101 or MCL 500.3102] was not in effect." MCL 500.3113(b).

scenario, the MACP continued, neither Bronson nor Esquivel would be entitled to assignment of the claim to an outside insurance company. The MACP accused Bronson of negligently releasing Esquivel without securing insurance information and then shifting the duty of investigation onto the agency. The statute, the MACP contended, places the burden of identifying applicable insurance on the party filing an application with the agency. The MACP premised this interpretation on MCL 500.3172(1)'s declaration that "a person entitled to claim" benefits must show that no insurance coverage is applicable or identifiable. The MACP also sought to impose sanctions against Bronson for filing a frivolous suit.

Bronson retorted that MCL 500.3172(1) contains four statutory conditions that "trigger eligibility for assigned claim benefits." Here, Bronson argued, that no insurance provider could be identified triggered eligibility. Moreover, Bronson asserted, it complied with the administrative rules governing applications to the MACP, see Mich Admin Code, R 11.07, and included all required information and documentation. Upon receipt of this application, the MACP was required by MCL 500.3173a(1) to "make an initial determination of a claimant's eligibility for benefits under the assigned claims plan and . . . deny an obviously ineligible claim." Bronson's claim was not "obviously ineligible," it argued, because there was no evidence that Esquivel had not maintained insurance on the day of the accident and Bronson had not been able to identify any applicable insurance. As such, the Mich Admin Code, R 11.103 required the MACP to assign the claim to a servicing insurer, and the servicing insurer would then be obligated to conduct an expeditious investigation pursuant to Mich Admin Code, R 11.109. If the servicing insurer's investigation revealed an applicable insurance policy, it then would be entitled to reimbursement. And contrary to the MACP's arguments, Bronson contended that nothing in the statutes required Bronson to establish at the time of application that no statutory coverage exclusions applied.

At the summary disposition hearing, the MACP expounded upon situations it believed should qualify for assignment when applicable insurance could not be identified.

> A hit-and-run accident where the claimant is a pedestrian and the car takes off and they don't know if there is insurance on that car or not; but, because the person is a pedestrian, they're entitled to benefits.

> Perhaps a person is a passenger in a car and, for one reason or another, the insurance can't be determined for that car. That person would be entitled to benefits even though . . . there is no identifiable insurance.

But where the injured party was the registered owner of the vehicle, the MACP insisted, no claim should be permitted. Rather, the hospital was required to establish whether the patient had insurance or not. And under either scenario, Esquivel would be ineligible for claim assignment, supporting the MACP's decision to deny the application.

---

[3] This provision states: "A person who because of a limitation or exclusion in [MCL 500. 3105 to 500.3116] is disqualified from receiving [PIP] benefits under a policy otherwise applying to his accidental bodily injury is also disqualified from receiving benefits under the assigned claims plan."

Bronson then clarified the relief it requested in the complaint:

[W]e're not asking the [MACP] to pay the claim. We have a declaratory judgment action asking the [MACP] to assign the claim to a servicing insurer to process and deny the claim potentially or pay the claim. But we're only, at this point in time, seeking the assignment of this claim to a servicing insurer. That's how this works. The [MACP] gets our application for benefits and then assigns it to a servicing insurer.

Bronson agreed with the MACP that "this can play out in two different ways," one ending with coverage from some insurer and the other ending in no coverage. However, Bronson disagreed with the MACP that the outcome was clear at such an early stage:

It could play out with the servicing insurer—Let's assume it's State Farm, for example, will get this claim and identify that Mr. Esquivel had insurance—higher priority insurance, in which case that insurance carrier will pay the claim[.]

Or State Farm, if they're the servicing insurer, will conclude after the assignment and with proper discovery where we get our day in court and we have the ability to litigate it, that, in fact, our patient Mr. Esquivel was an uninsured owner of a motor vehicle and consequently excluded from coverage.

One of those two situations is going to play out here, I have little doubt. But scenario number one could play out just as well as scenario number two. What that means is at this point in time, when all we're asking for is the [MACP] to assign the claim to a servicing insurer, we cannot say and the [MACP] cannot say that this patient is obviously ineligible for no-fault benefits because he very well may be entitled to no-fault benefits. That's not the [MACP's] call, that's the servicing insurer's decision.

The MACP responded that it simply does not have the resources suggested by Bronson to shift the burden of investigation onto the agency. The MACP thereby ignored Bronson's direct averment that it was actually placing the investigatory burden on the insurer assigned the claim.

It's a—Fishing expedition is [an] understatement. It's a hail Mary pass that they can somehow conscript the [MACP] into being a defendant in a litigation and trying to use resources that they believe it has that the [MACP] does not, in fact, have to locate a higher priority insurer that they hope exists.

The burden's on them. They've got until September of this year to find that insurer if it's out there.

Ultimately, the circuit court granted the MACP's summary disposition motion. The court credited the MACP's declaration that it denied the application for assignment because it determined that Esquivel owned the vehicle and therefore was clearly ineligible for assigned claim benefits, reading MCL 500.3113 and MCL 500.3173 together.

> Under these provisions, because Mr. Esquivel owned the motor vehicle involved in the accident, neither [PIP] benefits nor benefits under the [MACP] may be paid out for him. As such, [Bronson] was obviously ineligible for benefits under the [MACP], and the [MACP] correctly denied [Bronson's] claims, I find.

The court declared "wrong" Bronson's assertion that it satisfied MCL 500.3172(1) because it could not identify applicable insurance:

> First, 3172(1) has been characterized by courts as setting forth the circumstances under which defendant may receive or obtain the assigned claims benefits, not when defendant must accept a claim, *Spencer v Citizens Insurance Company*, 239 Mich App 291 at 301; *Spectrum Health v Grahl*, 270 Mich App 248 at 251 to '52.

> Instead, MCL 500.3173a governs when defendant must accept or deny a claim. Thus, 500.3172(1) is not dispositive on the issue of when defendant must accept or deny a claim.

> Second, statutes that relate to the same subject are to be read and construed together. . . .

> Accordingly, 500.3172(1) must be read together with the statutes that provide limitations and exclusions on who may receive assigned claims benefits and how [the MACP] is to handle these claims, including MCL 500.3113, MCL 500.3173, and MCL 500.3173a.

> When reading these statutes together, 500.3172(1) provides the general rule for eligibility; MCL 500.3173 provides exceptions to that rule; and MCL 500.3173a requires defendant to take both statutes into account when determining whether to deem a person obviously ineligible for purposes of deciding whether to deny assignment of his or her claim.

> * * *

> In light of what I think is a plain reading of the above described statutes, [Bronson's] pleadings, and the documentary evidence submitted fail to convince me that genuine issues of material fact exist for trial; and conversely, [the MACP] has satisfied its burden.

The MACP thereafter renewed its request for attorney fees and costs, claiming that Bronson's claims were frivolous. Counsel asserted that with the creation of the MACP, newly designated investigators discovered that significant waste had occurred under the prior regime:

> In January of this year, the Assigned Claims Facility was dissolved, and it was moved into a semi-governmental organization called the Assigned Claims Plan from a wholly governmental organization that was operated through the secretary of state.

-5-

And, the reason was, it was discovered that there was a lot of claims coming through the [MACP] that had absolutely no business being there, and a[n] effort is being made at this time to get those claims out so that the plan can provide the benefits to the people who are entitled to them and . . . that it will not be weighed down by claims from people that have no right bringing a claim against the plan.

The MACP's counsel continued that he discussed the agency's stance with Bronson's counsel, but Bronson refused to back down. Accordingly, counsel contended, Bronson filed its lawsuit knowing "that it did not have a right of recovery against the [MACP], and it was an effort to conscript the [MACP] to do its work for Bronson Hospital and try and locate—if possible—a higher priority insurer; and that is not what the [MACP] exists for."

Bronson denied the frivolity of its claims. Bronson argued that it was "unclear" whether Esquivel was the owner of an uninsured vehicle. As an applicable insurer could not be identified, Bronson requested assignment of the claim under the language of MCL 500.3172(1). This was a reasonable interpretation of the statute, Bronson maintained. The complaint was filed in good faith "where there had been no other clear and unequivocal case law addressing this precise issue." That the circuit court rejected Bronson's interpretation did not render its claims frivolous, Bronson concluded.

The circuit court granted the MACP's request for $4,654.85 in attorney's fees and costs pursuant to MCR 2.625 (frivolous claims). The court found that Bronson "had no reasonable basis to believe that" its claims were legally supported. "This wasn't even a close call on this case," the court emphasized. "There just was nothing that I could see that [Bronson] could hang its hat on here, and it was on a fishing expedition, and it was done at their own peril."

The circuit court subsequently denied Bronson's motion for reconsideration, and this appeal followed.

## II. STANDARDS OF REVIEW

The MACP sought summary disposition under both MCR 2.116(C)(8) and (10). The circuit court considered evidence beyond the pleadings and thereby granted the MACP's motion under (C)(10). *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 515 n 1; 629 NW2d 384 (2001). We review de novo a lower court's decision on a summary disposition motion. *Island Lake Arbors Condo Ass'n v Meisner & Assocs, PC*, 301 Mich App 384, 392; 837 NW2d 439 (2013). "'Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.'" *Id.*, quoting *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004).

We also review de novo underlying issues of statutory interpretation. *Barclae v Zarb*, 300 Mich App 455, 466; 834 NW2d 100 (2013).

The goal of statutory interpretation is to discern and give effect to the intent of the Legislature. To that end, the first step in determining legislative intent is the language of the statute. If the statutory language is unambiguous, then the Legislature's intent is clear and judicial construction is neither necessary nor permitted. [*Id.* at 466-467 (citations omitted).]

### III. SUMMARY DISPOSITION IMPROPERLY GRANTED

The circuit court erred in granting the MACP's motion for summary disposition before the parties conducted any discovery. Whether Esquivel failed to maintain statutorily required insurance for his vehicle constitutes an unresolved question of fact. The MACP presented no evidence that Esquivel was not insured. And Bronson has been unable to identify any applicable no-fault insurer. As such, it is not yet certain that Esquivel and thereby Bronson is ineligible for assignment of this claim to a servicing insurer. Alternatively stated, a fact question exists as to whether Esquivel was or was not insured, and thereby whether Bronson is "obviously ineligible" to seek no-fault benefits. Accordingly, summary disposition was at least premature.

"Enactment of the Michigan no-fault insurance act signaled a major departure from prior methods of obtaining reparation for injuries suffered in motor vehicle accidents. . . . Under this system, losses are recovered without regard to the injured person's fault or negligence." *Spencer v Citizens Ins Co*, 239 Mich App 291, 300; 608 NW2d 113 (2000). In the normal course, a party injured in a motor vehicle accident will seek benefits under his or her own no-fault policy, or through the policy of a family member. *Id.* at 301. As a last resort, when a liable insurer cannot be immediately identified or in some circumstances, when an injured party does not have insurance, the claim for benefits is placed before the MACP. *Id.*, *Hunt v Citizens Ins Co*, 183 Mich App 660, 665; 455 NW2d 384 (1990).

As noted, MCL 500.3172(1) provides, "A person entitled to claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle in this state may obtain [PIP] benefits through the [MACP] if . . . no [PIP] applicable to the injury can be identified." The MACP must "make an initial determination of the claimant's eligibility for benefits under" the plan but may only deny an application if based on "an obviously ineligible claim." MCL 500.3173a. If the claim is not "obviously ineligible," the MACP must "promptly" assign the claim to a servicing insurer. Mich Admin Code, R 11.108(3). Upon assignment, the servicing insurer "shall investigate the claim expeditiously." Mich Admin Code, R 11.109(1). The insurer assigned by the MACP stands in a position of last priority, *Hunt*, 183 Mich App at 665, and may seek to transfer a claim and to secure reimbursement if a higher priority insurer as identified in MCL 500.3114 or MCL 500.3115 is discovered. In the meantime, however, the injured party continues to receive benefits from the assigned insurer.

The MACP correctly states that an injured party "who because of a limitation or exclusion in [MCL 500.3105 to MCL 500.3116] is disqualified from receiving [PIP] benefits" from an assigned insurer through the MACP. MCL 500.3173. And MCL 500.3113(b) provides that "[a] person is not entitled to be paid [PIP] benefits" if he or she is "the owner or registrant of a motor vehicle . . . involved in the accident" and did not maintain statutorily required no-fault insurance at the time of the accident. The MACP also correctly posits that if Esquivel or a

-7-

family member in his household maintained no-fault insurance at the time of the accident, that insurer would take priority under MCL 500.3114(1).

It is not clear on this undeveloped record, however, that one of these scenarios exist. Esquivel's insurance status remains unknown. When he is deposed, the material fact missing from the no-fault equation will emerge. MACP has not yet carried its burden as the moving party to demonstrate with admissible evidence, rather than speculation, that Bronson was "obviously ineligible" to make a claim for benefits.

The MACP proffered the Michigan State Police accident report with its summary disposition motion. The report identified the vehicle involved in the accident, including its vehicle identification and license plate numbers. The vehicle was at that time registered to Cody Eleazar Esquivel. The report contains no information regarding Esquivel's no-fault insurance, or lack thereof. A corresponding fire department incident report also identified the vehicle and driver, but left blank sections designated for insurance information. The MACP provided Bronson's application for claim assignment, indicating that Esquivel's insurance information was "unknown." Finally, the MACP attached a letter that it had sent to Bronson, expressing its belief that the burden fell on Bronson to establish entitlement to benefits before the claim would be assigned.

Bronson supplemented the record evidence with its medical records pertaining to Esquivel's treatment. The records indicate that when Esquivel first arrived at the hospital, he was intubated, rendering him unable to communicate. Once extubated, Esquivel remained too intoxicated or confused to appropriately answer questions. When Esquivel's parents arrived, medical personnel asked them medical and psychological history questions. However, there is no indication in the medical records that Bronson staff questioned Esquivel, once he was sober, regarding his no-fault automobile insurance. The records also do not include any reference to Esquivel's health insurance provider, if any.

Bronson also provided evidence of its attempts to locate Esquivel to secure insurance information after his release. Bronson made a Freedom of Information Act request to the Michigan State Police for the accident report. Bronson submitted the letter it sent to Esquivel three months after the accident at the address listed in the police report. Bronson included a copy of the enveloped returned as undeliverable and stamped "Attempted – Not Known, Unable to Forward." Bronson attached identification and address information provided by the Secretary of State and discovered through an "Accurint" Internet search, both of which led to some stale contact information. Mail submitted to the most current address discovered for Esquivel went unanswered and unreturned.

Ultimately, nothing in the record establishes that Esquivel was actually uninsured. And no applicable insurance has been identified, despite Bronson's efforts. Thus, at this juncture, Bronson's claims fall squarely within that portion of MCL 500.3172(1) addressing claims for which "no personal protection insurance applicable to the injury can be identified." The existence of a central material fact question—whether or not Esquivel had insurance at the time of the accident—precluded summary disposition, and the circuit court erred in granting the MACP's motion and request for sanctions.

We vacate and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. As this case involves a question of public policy, Bronson may not tax its costs under MCR 7.219.


/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher