PAYNE *v.* DEARBORN NATIONAL CASUALTY COMPANY.

1. INSURANCE—AUTOMOBILES—OWNERSHIP.

    The protection of a policy of automobile insurance is entirely governed by ownership in the named insured of the automobile described in the policy as there is no insurance separate and distinct from the ownership of the car.

2. WITNESSES—CONSTRUCTION OF TESTIMONY.

    The testimony of a witness should be so construed as to leave it consistent rather than self-contradictory, unless some of the witness' statements are required to be disregarded by so doing, but having due regard to other testimony in the case.

3. APPEAL AND ERROR—AUTOMOBILES—CERTIFICATE OF TITLE—AGENCY OF PURCHASER'S WIFE—FINDING OF COURT—EVIDENCE.

    Finding of trial court that plaintiff's wife was not the agent of plaintiff in accepting indorsed certificate of title of automobile which plaintiff was purchasing from its former owner *held*, against the clear weight of the evidence.

4. INSURANCE—AUTOMOBILES—OWNERSHIP.

    Ownership of plaintiff in car involved in accident *held*, shown by evidence, hence where liability insurance policy thereon had not been assigned to him and he was not covered as to such car by policy on another car owned by him insurer was not liable.

5. AUTOMOBILES—CERTIFICATE OF TITLE—TRANSFER—OWNERSHIP—INSURANCE.

    The failure of a notary to affix her signature to the acknowledgment on a certificate of title to an automobile and the failure to forward the transferred certificate of title to the secretary of State does not preclude finding that transferee was the owner of the car within the meaning of automobile liability insurance policies.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 5]  5 Am Jur, Automobiles, § 511 *et seq.*
[3]  3 Am Jur, Appeal and Error, § 899.

Appeal from Muskegon; Sanford (Joseph F.), J. Submitted April 11, 1950. (Docket No. 50, Calendar No. 44,753.) Decided June 27, 1950.

Assumpsit by Charles T. Payne against Dearborn National Casualty Company on two casualty insurance policies. Judgment for plaintiff. Defendant appeals. Reversed and new trial granted.

*Hathaway & Latimer,* for plaintiff.

*Alexis J. Rogoski,* for defendant.

REID, J. Plaintiff Payne sued on his policy issued to him by defendant by reason of plaintiff's liability to third parties because of a collision (while plaintiff was driving a DeSoto car) and for personal injuries to plaintiff, the policy having reference to plaintiff's Plymouth automobile, and plaintiff also counted on a policy issued by defendant to one Robert K. Wilson which had reference to Wilson's DeSoto automobile which plaintiff was in process of buying or had bought on April 17, 1948, for liability incurred by plaintiff in the same accident.

The trial judge allowed plaintiff under his own policy on the Plymouth car, $729.35 on account of medical expenses, and under the Wilson policy on the DeSoto car for amount in settlement with third party Hazebrook, $667.00, for his attorney fees in the Hazebrook suit, $755.00, and for legal expenses other than fees, $17.35, a total judgment of $2,168.70 plus cost and charges, from which judgment defendant appeals.

On July 15, 1947, plaintiff obtained from defendant a policy of insurance having reference to plaintiff's Plymouth automobile and on December 16, 1947, Robert K. Wilson received from defendant a policy respecting Wilson's DeSoto automobile.

The provisions of the 2 policies were identical, except that the Wilson policy did not include medical coverage and also except as to policy limits. The 2 policies provided for many items of similar coverage, including public liability, property damage and defense of suits.

Plaintiff's policy on the Plymouth contained the following:

"V. USE OF OTHER AUTOMOBILES

"Such insurance as is afforded by this policy for bodily injury liability and for property damage liability with respect to the automobile classified as 'pleasure and business' applies (1) to the named insured, if an individual and the owner of such automobile, or if husband and wife either or both of whom own such automobile, and (2) to the spouse of such individual if a resident of the same household, to the employer of such named insured or spouse and to the parent or guardian of such named insured or spouse, if a minor, as insured, with respect to the use of any other automobile by or in behalf of such named insured or spouse.

"This insuring agreement does not apply:

"(A) To any automobile owned in full or in part by, registered in the name of, hired as part of a frequent use of hired automobiles by, or furnished for regular use to, the named insured or a member of his household other than a private chauffeur or domestic servant of the named insured or spouse."

Said policy contained the following insuring agreement with regard to medical payments:

"1—Broad form—to pay to or for each person who sustains bodily injury, caused by accident, while in or upon, entering or alighting from (1) the automobile if the injury arises out of the use thereof by or with the permission of the named insured, or (2) any other private passenger automobile with respect to the use of which insurance is afforded under insuring agreement V of this policy, if the injury

arises out of the use thereof and results from (A) the operation of said automobile by the named insured or spouse or by a private chauffeur or domestic servant of either or (B) the occupancy of said automobile by the named insured or spouse, the reasonable expense of necessary medical, surgical, ambulance, hospital and professional nursing services and, in the event of death resulting from such injury, the reasonable funeral expense, all incurred within 1 year from the date of accident."

Division III of the Wilson policy issued by defendant is as follows:

"The unqualified word 'insured' wherever used in coverages A and B and in other parts of this policy, when applicable to such coverages, includes the named insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured. The insurance with respect to any person or organization other than the named insured does not apply:

"(A) To injury to or death of any person who is a named insured;

"(B) To any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operation thereof;

"(C) To any employee with respect to injury to or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer."

Division X of the said Wilson policy is as follows:

"This policy applies only to accidents which occur and to direct and accidental losses to the automobile which are sustained during the policy period,

while the automobile is within the United States of America, its territories or possessions, Canada or Newfoundland, or is being transported between ports thereof, and is owned, maintained and used for the purposes stated as applicable thereto in the declarations."

Wilson's policy was not assigned to plaintiff. In the case of *Byrd* v. *American Guarantee and Liability Ins. Co.* (CCA), 180 F2d 246, we note on page 249 the following:

"The policy likewise embraces in section III the definition of an insured: 'The unqualified word "insured" wherever used in coverages A and B and in other parts of this policy when applicable to such coverages, includes the named insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured.'

"We therefore hold that the protection of the policy of insurance is entirely governed by ownership in the named insured of the automobile described in the policy. There is no insurance separate and distinct from the ownership of the car. The named insured was insured only as owner of the car mentioned, and the coverage of those using it with his permission was likewise restricted to the period of his ownership."

While the language of the policy in the *Byrd Case* differs from the language in the Wilson policy in the instant case, still we think the quoted language of pertinent value in determining the issues in this case.

Wilson was arrested and was in jail at White Cloud. His DeSoto car was left with plaintiff for safekeeping. Before April 17, 1948, plaintiff and Mrs. Wilson visited Wilson at the jail. Plaintiff

heard Wilson tell Mrs. Wilson she could probably get $200 for his car. The car was subject to a lien for approximately $700 payable to a finance company.

Plaintiff Payne testified:

"I told her [Mrs. Wilson] that if she would take it [the DeSoto] down to the dealer and find out what she could get for the equity, I would consider paying that amount for the car."

Payne went to the office of Wilson's attorneys before April 17th to see about the car or the financing of it and went to the office of the financing company but found that if he (plaintiff) took over the payments on the car, an additional fee would be required. Payne further testified that before April 17, 1948, he decided to buy the DeSoto. Payne made out a check in the amount of $200 payable to the order of Robert K. Wilson. There is typed on the bottom of the check, "Part payment of fordor DeSoto." Payne testified that no price for the car was set by conversation between himself and Wilson.

On April 17th, with the check for $200 and the certificate of title to the DeSoto in Mrs. Payne's hands, plaintiff and Mrs. Payne drove to White Cloud. After waiting for some time at the jail to see Wilson, plaintiff went away from the jail to get a notary to take an acknowledgment and in his absence plaintiff's wife had an interview with Wilson through an opening in a door inside the county jail. Mrs. Payne handed Wilson through the opening, the check for $200 and the certificate of title to Wilson's car with form of assignment with plaintiff's name as the assignee. Wilson indorsed the check, signed the assignment of the certificate of title, handed the check and assignment back to Mrs. Payne, raised his hand and swore to the assignment. Mrs. Payne was a notary of Muskegon county, but

doubted whether she could act in Newaygo county, and did not certify to the jurat to the assignment, and without being instructed to return the assignment to Hathaway & Latimer, attorneys for Wilson in Wilson's criminal case, inclosed both the indorsed check and certificate of title in an envelope addressed to Hathaway & Latimer. Hathaway had instructed plaintiff to send him the check but did not give such instruction as to the assignment of the certificate of title. The envelope had been furnished by Wilson's attorneys for the mailing to the attorneys of the check, it being understood the check must be in the attorneys' hands before April 21st, the date set for Wilson's trial. The check was indorsed, "Pay to the order of Hathaway & Latimer, attorneys." Mrs. Payne's act in mailing the indorsed certificate of title to Hathaway could be regarded as an oversight on her part.

Prior to April 17th, Wilson's DeSoto was stored in plaintiff's garage for safekeeping but plaintiff did not drive it before April 17th. On April 18th, plaintiff Payne drove Mrs. Wilson and Mrs. Payne to Whitehall in the DeSoto, thereby using the DeSoto for Payne's own purposes.

Plaintiff testified,

"I never asked Wilson to return the $200. I intended that he was to keep it. I understood that was to pay for his automobile or some interest in it. He said that was all right."

Plaintiff also testified,

"I handed it [the check] to Mr. Wilson and asked him if that was all right. He said it was OK I guess. I don't remember what he said."

Wilson testified,

"I wrote the signature on there [the assignment of title] for transfer of title."

The parties to this case differ in the construction to be given the following testimony by Wilson:

"I authorized you [Mr. Hathaway] as my attorney to deliver the title certificate to Charles Payne. That was our understanding, any matter I had you were to take care of. I told you that you had authority to give the certificate to Mr. Payne before the finance company was paid. That was on the first day of the trial. My trial was on April 21, 1948. I gave you that authority conditionally on Mr. Payne paying off the $700 to the finance company. I am debating what was said. Charlie knew the balance of the car had to be paid off and he knew somebody had to pay it other than myself or my wife. If he took the car, it would be his responsibility to pay the finance company. I never authorized you to give the title up before the finance company was paid off. We never talked about that."

The testimony of a witness should be so construed as to leave it consistent rather than self-contradictory, unless some of the witness' statements are required to be disregarded by so doing, but having due regard however to other testimony in the case. Accordingly, the quoted paragraph of Wilson's testimony can be construed to mean substantially, "I authorized Hathaway to deliver the title certificate to Charles Payne, but I never *expressly* stated that Hathaway could so deliver before Payne paid the finance company, on which subject nothing was said. Payne knew that somebody had to pay the finance company other than my wife and myself."

If that is a correct construction of Wilson's testimony, there is nothing in Wilson's testimony to show there was any reservation concerning sale to Payne.

The assignment recited that the DeSoto was subject to a lien in favor of Fidelity Corporation of

Michigan, but does not recite that the assignee assumes payment thereof.

Plaintiff testified,

"I knew my wife was going to turn it [the check] over to him to indorse it to his attorneys."

It could be concluded that when Wilson at the Newaygo county jail delivered the certificate of title over to plaintiff's wife indorsed to plaintiff, that was a delivery to plaintiff of title to the DeSoto car.

The trial court's finding that Mrs. Payne was not her husband's agent is against the clear weight of evidence.

The conclusion of the trial court, "As a matter of law that title did not pass to the plaintiff," we find erroneous.

In any event, it is clear from plaintiff's own testimony that plaintiff had purchased either the title to Wilson's DeSoto or at least an interest in such title.

Plaintiff did not avail himself of the provision of his policy respecting newly-acquired automobiles nor did he pay any additional fee therefor.

Plaintiff says he did not use the DeSoto car before April 17th, but he did use the DeSoto for his own purposes after that date, at least, in driving to Whitehall on April 18th. He drove the DeSoto car to a meeting in Lansing and on the return from that meeting, on April 20 or 21, 1948 (the date of the collision is in confusion in the record), while driving the DeSoto, he became involved at the intersection of M–16 and M–50 in a collision with 2 other automobiles, in which plaintiff suffered personal injuries, the DeSoto was demolished, and plaintiff incurred liability to the owners of the 2 other cars for damages.

The court found there was no transfer in whole or in part of title to the DeSoto car before the collision. This finding is against the clear weight

of evidence and is therefore reversed. There is sufficient showing in the testimony of plaintiff himself as well as the testimony of Wilson to show that plaintiff was the owner of the DeSoto car at the time of the accident.

The failure of the notary to affix her signature to the acknowledgment and failure to forward the transferred certificate of title to the secretary of State does not preclude us from treating plaintiff as the owner within the meaning of the policies of insurance. See *Fleckenstein* v. *Citizens' Mutual Automobile Ins. Co.*, 326 Mich 591, 600, and *Wood* v. *Merchants Ins. Co.*, 291 Mich 573, 577.

If plaintiff was the owner of the DeSoto car at the time of the collision, he was not covered by the policy issued to him under the use of other automobiles clause of his policy.

Plaintiff is not entitled to recover under the policy issued to Wilson, if at the time of the collision plaintiff was driving the DeSoto car in his capacity as owner. The finding that plaintiff was not driving the DeSoto car in his capacity as owner is against the clear preponderance of evidence.

The judgment appealed from is reversed. A new trial is ordered. Costs to defendant.

BOYLES, C. J., and NORTH, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.