*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BETH BRACY,

        Plaintiff-Appellee,

and

ZMC PHARMACY, LLC, and MICHIGAN
SPINE & PAIN,

        Intervening Plaintiffs-Appellees,

and

RIVERVIEW MACOMB HOME &
ATTENDANT CARE,

        Intervening Plaintiff,

v

YOLANDA YVETTE NICHOLS,

        Defendant,

and

FARMERS INSURANCE EXCHANGE,

        Defendant/Cross-Plaintiff-Appellee,

and

GEICO INDEMNITY COMPANY,

        Defendant/Cross-Defendant-
        Appellant.

UNPUBLISHED
September 19, 2019

No. 341837
Wayne Circuit Court
LC No. 15-016675-NF

Before: LETICA, P.J., and M. J. KELLY and BOONSTRA, JJ.

PER CURIAM.

-1-

In this no-fault insurance dispute, GEICO Indemnity Company appeals as of right an order granting summary disposition in favor of Farmers Insurance Exchange. We reverse and remand for entry of an order granting summary disposition in favor of GEICO.

## I. BACKGROUND

Yolanda Yvette Nichols was operating a 1993 Chevrolet Lumina on August 23, 2014, when she struck a pedestrian, Beth Bracy. Having sustained severe injuries in the accident, Bracy filed an application for personal protection insurance (PIP) benefits with the Michigan Assigned Claims Plan (MACP), indicating that she owned no vehicles, had no automobile insurance, and lived alone at the time of the accident. The MACP assigned Bracy's claim to Farmers. After Bracy filed suit against Yolanda and Farmers, she discovered that GEICO may have been responsible for payment of her PIP benefits on the basis of a no-fault policy it issued to Yolanda's son, Marcus Nichols. The GEICO policy afforded coverage to several vehicles, including the Lumina involved in the accident, and Yolanda was identified in the policy as an additional driver. Bracy subsequently amended her complaint to add GEICO as a defendant.

During her deposition, Yolanda testified that she was the sole owner of the Lumina and that Marcus "put me on the insurance with him" because she did not have stable, permanent housing at the time she purchased the vehicle. It also became apparent during the deposition that Yolanda did not reside with Marcus.

Following these revelations, Farmers and GEICO filed competing motions for summary disposition, each denying liability for Bracy's PIP benefits as the insurer of highest priority under the no-fault act, MCL 500.3101 *et seq*. Farmers maintained that PIP benefits were only payable through an assigned claim if there was no other applicable insurance and, with respect to nonoccupants of a motor vehicle who do not have a no-fault policy in their households, MCL 500.3115 provides that PIP benefits are first payable by insurers of owners or registrants of the motor vehicles involved in the accident. Thus, according to Farmers, because the Lumina that struck Bracy was owned by Yolanda and insured by GEICO, GEICO was responsible for Bracy's PIP benefits. GEICO, on the other hand, argued that Bracy had to turn to the MACP for PIP benefits because Marcus made material misrepresentations when he added Yolanda's Lumina to his GEICO policy, thereby rendering the policy void. GEICO alternatively asserted that it had no liability for Bracy's PIP benefits because Yolanda, the owner of the vehicle, did not have a no-fault insurance policy in place at the time of the accident and Marcus lacked an insurable interest in the Lumina. Based upon the trial court's comments during the hearing on the dispositive motions, we infer that the trial court found GEICO's proofs inadequate to establish fraud warranting rescission of the subject policy. The trial court did not address GEICO's alternative arguments and, instead, granted summary disposition in favor of Farmers. In its order, the trial court also directed GEICO to take over the handling of Bracy's claim and to reimburse Farmers for amounts it paid to Bracy, as well as interest and adjusting costs.

## II. STANDARD OF REVIEW

We review a trial court's ruling on a summary disposition motion de novo. *Batts v Titan Ins Co*, 322 Mich App 278, 284; 911 NW2d 486 (2017). "A motion brought under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim and should be granted if, after consideration of the evidence submitted by the parties in the light most favorable to the nonmoving party, no genuine issue regarding any material fact exists." *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "When deciding a motion for summary disposition under this rule, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence then filed in the action or submitted by the parties . . . ." *Bialick v Megan Mary, Inc*, 286 Mich App 359, 362; 780 NW2d 599 (2009).

## III. ANALYSIS[1]

An uninsured pedestrian—that is, a pedestrian who is not covered under a no-fault policy of his or her own or a policy issued to a spouse or resident relative, see MCL 500.3114(1)—who suffers accidental bodily injury must seek PIP benefits from insurers in the following order of priority:

> (a) Insurers of owners or registrants of motor vehicles involved in the accident.

> (b) Insurers of operators of motor vehicles involved in the accident. [MCL 500.3115(1).]

Where no such insurer exists or the insurer cannot be ascertained, the uninsured pedestrian may seek PIP benefits through the MACP. *Spencer v Citizens Ins Co*, 239 Mich App 291, 301-302; 608 NW2d 113 (2000). Because an assigned claim is only available when no other insurance is applicable to the injury, the servicing insurer delegated by the MACP is considered the insurer of last priority. *Id*. at 301. Furthermore, if an insurer of higher priority is later identified, the

---

[1] We note that the no-fault act was recently amended by 2019 PA 21, effective June 11, 2019. Under the amended version of MCL 500.3115, i.e., the statutory provision under which GEICO's liability to Bracy allegedly arises, "a person who suffers accidental bodily injury while not an occupant of a motor vehicle shall claim personal protection insurance benefits under the assigned claims plan." If we were to apply MCL 500.3115 as amended to this case, GEICO would have no liability for Bracy's PIP benefits because, as a matter of law, she would be required to claim PIP benefits through the MACP. But, as a general matter, this Court presumes that statutory amendments apply prospectively in the absence of clear legislative intent to the contrary, *Johnson v Pastoriza*, 491 Mich 417, 429; 818 NW2d 279 (2012), and the parties have not argued that 2019 PA 21 should be applied retroactively. We will therefore resolve this appeal by applying the prior versions of the relevant statutes. All citations in this opinion to provisions of the no-fault act refer to the preamendment statutes.

servicing insurer " 'is entitled to reimbursement from the defaulting insurers to the extent of their financial liability.' " *Williams v Enjoi Transp Solutions*, 307 Mich App 182, 186; 858 NW2d 530 (2014), quoting MCL 500.3172(1).

Among other claims of error, GEICO continues to argue on appeal that it has no liability for Bracy's PIP benefits because Marcus lacked an insurable interest in the Lumina.[2] GEICO's position is flawed in that it assumes, without analysis or citation to pertinent authority, that GEICO could potentially have liability for Bracy's PIP benefits under MCL 500.3115(1) unless the subject policy can be voided. GEICO's argument seems to rest on a misunderstanding of the priority order established in MCL 500.3115(1), which makes the insurers of *owners or registrants* of the vehicles involved in the accident the insurers of highest priority, followed by the insurers of *operators* of the vehicles involved. *Pioneer State Mut Ins Co v Titan Ins Co*, 252 Mich App 330, 335-336; 652 NW2d 469 (2002); *Spencer*, 239 Mich App at 301. The statute is not limited to circumstances in which the owner, registrant, or operator is a named insured in the policy, *Amerisure Ins Co v Coleman*, 274 Mich App 432, 438-439; 733 NW2d 93 (2007), nor does it impose any obligation on the insurer of the *vehicle* involved in the accident, *Pioneer State Mut Ins Co*, 252 Mich App at 336.

The undisputed evidence in this case demonstrated that Yolanda was the sole owner and registrant of the Lumina, as well as the person operating the Lumina at the time of the accident. As such, even if we determined that Marcus had an insurable interest in the Lumina, GEICO would not be the highest priority insurer unless it is also considered Yolanda's insurer under the policy procured by Marcus.[3] *Id*. Accordingly, before considering whether Marcus possessed an insurable interest, we deem it more appropriate to first determine whether GEICO was Yolanda's insurer for purposes of establishing priority under MCL 500.3115(1).

In *Amerisure Ins Co*, 274 Mich App at 435-436, this Court considered a priority dispute arising under MCL 500.3114(4), which governs the priority of insurers with respect to a claim brought by an occupant of a motor vehicle when the claimant has no personal or household insurance available under MCL 500.3114(1). Like the statute concerning a claim brought by an

---

[2] While we recognize that the trial court did not reach this issue, we are not precluded from addressing it because GEICO raised it before the trial court and continues to pursue it on appeal. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994); *Cheboygan Sportsman Club v Cheboygan Co Prosecuting Attorney*, 307 Mich App 71, 76; 858 NW2d 751 (2014).

[3] In *Amerisure Ins Co v Auto-Owners Ins Co*, 262 Mich App 10, 13; 684 NW2d 391 (2004), a motor vehicle was being operated by its owner and registrant when a passenger jumped from the vehicle and sustained injuries. The vehicle was insured by Auto-Owners under a policy issued to a company that employed the driver's father. *Id*. at 13 & n 1. In a priority dispute between Auto-Owners and the assigned insurer, the trial court granted summary disposition in favor of Auto-Owners because the insured entity had no insurable interest in the vehicle. *Id*. at 13-14. This Court affirmed, but on different grounds; the owner, registrant, and operator of the vehicle did not have a policy of insurance with Auto-Owners. *Id*. at 15.

uninsured nonoccupant, MCL 500.3114(4) places the "insurer of the owner or registrant of the vehicle occupied," as the insurer of highest priority, followed by the "insurer of the operator of the vehicle occupied." Compare MCL 500.3114(4) (listing the insurers of the owner, registrant, or operator of the vehicle occupied) and MCL 500.3115(1) (listing the insurers of the owner, registrant, or operator of the vehicles involved). Bernard Coleman was operating a Plymouth Spirit when he was involved in an accident; Bernard's wife, Tonya Coleman, and his nephew, Reginald Coleman, were passengers and Reginald was injured. *Amerisure Ins Co*, 274 Mich App at 433-434. The Spirit was owned and registered by Tonya's mother, who failed to insure the vehicle. *Id*. at 433. However, Tonya had a no-fault insurance policy issued by Titan Insurance Company covering another vehicle. *Id*. at 434. Because Reginald had no insurance of his own and Tonya's mother failed to insure the Plymouth Spirit, Reginald sought PIP benefits from Titan. *Id*. at 434. On appeal from the trial court's order granting summary disposition in favor of the assigned insurer, this Court considered whether Titan was the insurer of Bernard, i.e., the operator of the vehicle Reginald was occupying at the time of the accident. *Id*. at 435-436.

Because the no-fault act does not define the term "insurer," this Court considered the following dictionary definition: " '[o]ne who agrees, by contract, to assume the risk of another's loss and to compensate for that loss.' " *Id*. at 435, quoting *Black's Law Dictionary* (7th ed) (alteration in original). Given the plain meaning of "insurer" implicated by this definition, this Court turned to the Titan policy to determine whether it agreed by contract to insure Bernard and concluded as follows:

> [U]nder the clear terms of the policy, Titan was Bernard's insurer. Although Tonya (not Bernard) was the "named insured" in the policy, the policy states that "[i]n return for your premium payment, we agree to insure you subject to all the terms of this policy" and broadly defines "you" and "your" to mean "the 'named insured' shown in the Declarations and the spouse if a resident of the same household." Further, in the part relating to no-fault coverages, the policy defines "insured" as including "[y]ou or any family member." Bernard qualified as a person insured by Titan under the policy pursuant to both of these definitional sections because he was the spouse of Tonya residing in her household and, therefore, one of her family members at the time of the accident. Thus we conclude that, for purposes of MCL 500.3114(4)(b), Titan was the "insurer of the operator of the vehicle occupied" by Reginald at the time of the accident and therefore liable for the payment of PIP benefits. [*Amerisure Ins Co*, 274 Mich App at 436-437 (second and third alterations in original).]

Thus, under *Amerisure Ins Co*, whether a person is an "insured" or, conversely, whether an insurance carrier is the insurer of someone other than the named insured, is not determined by identifying the person who procured the policy or paid the premiums. Instead, whether a no-fault insurance carrier is the insurer of someone other than the named insured depends on the language of the insurance policy. *Dobbelaere v Auto-Owners Ins Co*, 275 Mich App 527, 532-533; 740 NW2d 503 (2007) (construing comparable statutory language regarding priority under MCL 500.3114(4)).

In this case, the declaration page of the GEICO policy identified Marcus as the named insured and Yolanda as an additional driver. Section 2 of the GEICO policy pertains to Michigan no-fault insurance, and Part 1 concerns PIP coverage. Although the term "insured" is defined elsewhere in the policy, the provisions concerning PIP coverage do not define the term. Instead, Part 1 discusses coverage limits, exclusions, and conditions with reference to an "eligible injured person," and appears to afford coverage to injured persons in a manner generally consistent with the no-fault act. When the no-fault endorsement of an insurance contract fails to define who is an "insured," and nothing in the plain language of the policy's declarations or general verbiage suggests an intent by the contracting parties to make others contractual insureds, this Court has refused to declare the named insured's family members as contractual insureds under the policy. *Id*. at 534. But cf. *Clevenger v Allstate Ins Co*, 443 Mich 646, 652-653; 505 NW2d 553 (1993) (holding that policyholder's wife was an insured under policy defining "named insured" to include " 'the individual named in the declarations, and his spouse if a resident of the same household' "). This is true even when the potential insured person is identified as an additional driver in the policy declarations. *Dobbelaere*, 275 Mich App at 534 n 3 (stating that such a designation is "insufficient to support that these individuals were contractually intended to be insureds under the policy for purposes of no-fault benefit coverage"). Given the absence of any indication in the policy language that Marcus and GEICO intended for Yolanda to be an insured, we conclude that GEICO is not Yolanda's insurer for purposes of determining priority for payment of Bracy's PIP benefits under MCL 500.3115(1).[4] The trial court erred by granting summary disposition in favor of Farmers because GEICO is not the insurer of the owner, registrant, or operator of the vehicle involved in the accident. To the contrary, summary disposition should have been granted in favor of GEICO because it has no liability for Bracy's PIP benefits under MCL 500.3115(1).

Furthermore, even if we determined that GEICO was Yolanda's insurer for purposes of MCL 500.3115(1), we agree with GEICO's contention that Marcus lacked an insurable interest in the Lumina. This Court has previously held that the *named insured* "must have an 'insurable interest' to support the existence of a valid automobile liability insurance policy." *Smith v Allstate Ins Co*, 230 Mich App 434, 439-440; 584 NW2d 355 (1998). This requirement stems

---

[4] This result is also consistent with the manner in which "insured" is defined elsewhere in the policy. For instance, under the liability coverage set forth in § 1 of the policy, the "insured" includes, in relevant part, "[*y*]*ou* and *your relatives*." "You" and "your" refers to "the policyholder named in the Declarations," or "his or her spouse if a resident of the same household." The term relative is defined, in pertinent part, as "a person residing with you, and related by blood, marriage, or adoption, . . . provided neither such relative nor his/her spouse owns a *private passenger, farm* or *utility auto*." Despite her familial relationship with Marcus (the policyholder named in the declarations), Yolanda did not qualify as his "relative" under the terms of the policy because she did not reside with Marcus and she owned a private passenger auto (the Lumina). Therefore, even if this Court were to apply the definition of "insured" from § 1 to the portion of the contract applicable to PIP coverage, Yolanda would not be an insured because she is not a policyholder, Marcus's spouse, or a "relative" as that term is defined in the contract.

from public policy designed to prevent "the use of insurance as a form of wagering" and discourage "the creation of socially undesirable interests . . . ." *Id*. at 438. The nature of the required insurable interest, however, has often been in dispute. For instance, in *Clevenger*, 443 Mich at 648, Douglas Preece purchased a vehicle from his aunt, JoAnn Williams. Preece paid Williams the purchase price and Williams gave Preece the signed certificate of title. *Id*. Williams's license plate remained on the vehicle and her registration certificate and proof of insurance remained in the glove compartment when Preece drove away with the intention of securing his own registration and license the next business day. *Id*. Preece was later involved in an accident, and the injured occupant of the other vehicle filed a third-party tort claim against Preece and Williams for residual liability. *Id*. at 649. Williams's no-fault insurer argued, *inter alia*, that it was not obligated to indemnify Williams because she no longer held the title to the vehicle and, therefore, had no insurable interest in it. *Id*. at 656. After considering the no-fault act's mandate that the owner or registrant of a vehicle registered in this state maintain security for payment of specified benefits, as well as other duties regarding registration set forth in the Michigan Vehicle Code, MCL 257.1 *et seq*., the Supreme Court concluded as follows:

> A reasonable inference can be made that Williams voluntarily remained the insuring registrant of the Pontiac, as evidenced by the testimony and by allowing Preece to take possession and operate the vehicle on a public highway with her plate attached and with her certificates of insurance and registration in the glove compartment. Moreover, Mrs. Williams' failure to retain title to the automobile did not excuse her compliance with any other legislative requirements she may have had under the no-fault insurance act. As the registrant of a vehicle she permitted to be operated upon a public highway, Mrs. Williams was required by the act to provide residual liability insurance on the vehicle under the threat of criminal sanctions, [MCL 500.3101 and MCL 500.3102]. In this limited context, Mrs. Williams' insurable interest was not contingent upon title of ownership to the automobile but, rather, upon personal pecuniary damage created by the no-fault statute itself. Thus, we reject Allstate's argument that Mrs. Williams, as the registrant of the Pontiac, had no "insurable interest" in the vehicle because she was no longer the title holder. [*Id*. at 660-661.]

By contrast, in *Smith*, 230 Mich App at 435, when Charles Hinton sold his vehicle to Bruce Walsh, Hinton removed his license plate, registration, and certificate of insurance from the car before giving Walsh possession. Walsh was involved in an accident several hours later. *Id*. This Court distinguished *Smith* from *Clevenger* because there was no evidence that Hinton voluntarily remained the insuring registrant of the vehicle. *Id*. at 440-441. Given Hinton's removal of his license plate, registration, and insurance from the vehicle at the time of a bona fide sale, Hinton effectively "destroyed [his] status as owner and as registrant." *Id*. at 441. Consequently, this Court held that Hinton's liability insurance policy was void at the time of the accident for want of an insurable interest. *Id*.

Later, in *Universal Underwriters Group v Allstate Ins Co*, 246 Mich App 713; 635 NW2d 52 (2001), this Court considered the insurable interest requirement in the context of claimant who had yet to acquire legal title to the vehicle before she was injured. In that case, Cherry Broadway was in the market to purchase a vehicle and had begun negotiations to purchase a Buick LaSabre. *Id*. at 715. Broadway was permitted to drive the LaSabre while her financing

was being processed, and she provided the dealership with a certificate of no-fault insurance issued by Allstate covering the LaSabre. *Id*. at 715-716. Broadway was injured in an accident before the purchase could be completed, and the sale was never finalized. *Id*. at 717. Allstate sought to avoid liability for Broadway's PIP benefits on the basis that the insurance binder it issued was conditioned upon Broadway's purchase of the vehicle and was not in effect at the time of the accident because Broadway did not have an insurable interest in the vehicle at that time. *Id*. at 719. This Court observed that while *Clevenger* and *Smith* focused on the insured's status as an owner or registrant, those cases involved residual liability insurance and neither case required the insured to be an owner or registrant in order to have an insurable interest sufficient to support *PIP* coverage. *Id*. at 725, 728. However, earlier caselaw had found that policies affording PIP coverage remained in effect after the insured transferred ownership of the insured vehicles because PIP benefits are not conditioned upon the ownership of an automobile and do not require the involvement of an insured vehicle. *Id*. at 725-729, citing *Madar v League Gen Ins Co*, 152 Mich App 734; 394 NW2d 90 (1986) (finding that the decedent's interest in his own health and well-being was sufficient to support entitlement to PIP benefits "regardless of whether a covered vehicle is involved"), and *Cason v Auto Owners Ins Co*, 181 Mich App 600, 609; 450 NW2d 6 (1989) ("The prior transfer of ownership in the motor vehicle named in the insurance policy does not terminate the personal protection insurance coverage of the policy."). The Court reasoned:

> [W]hile Broadway, the named insured, did not yet own the vehicle, she took possession of it with the expectation of completing a sales transaction and pursuant to an agreement that her insurance would be primary. We fail to see why an otherwise valid insurance binder should be declared invalid merely because the accident preceded the completion of the sale, or because the eventual sale involved a different vehicle. The binder covered Broadway and the vehicle involved in the accident and purported to be in effect at the time of the accident. Rights created under an insurance policy become fixed as of the date of the accident. [*Universal Underwriters Group*, 246 Mich App at 729.]

In other words, Broadway had an adequate insurable interest for the purpose of securing PIP insurance. *Id*. at 730.

The precedent established by these cases makes clear that the adequacy of the insured's interest in the insured vehicle involves a fact-specific inquiry and may vary based upon the nature of the insurance benefits at issue. However, it is notable that in each instance the individual who procured the subject insurance had a recognizable interest in the insured vehicle at the time insurance policy was *issued*. See *Clevenger*, 443 Mich at 648, 653 (named insured owned and registered the vehicle when policy was issued); *Universal Underwriters Group*, 246 Mich App at 730 (named insured was contracting for purchase of vehicle and assumed liability by agreement); *Smith*, 230 Mich App at 435 (owner and registrant); *Cason*, 181 Mich App at 603 (same); *Madar*, 152 Mich App at 736 (owner). Accordingly, this Court has also explained that "the genesis and development of the 'insurable interest' requirement shows that public policy forbids the *issuance* of an insurance policy where the insured lacks an insurable interest." *Morrison v Secura Ins*, 286 Mich App 569, 573; 781 NW2d 151 (2009). " '[F]undamental principles of insurance' require the insured to 'have an insurable interest before he can insure: *a policy issued when there is no such interest is void*, and it is immaterial that it is taken in good

-8-

faith and with full knowledge.' " *Id*. at 572, quoting *Agricultural Ins Co v Montague*, 38 Mich 548, 551 (1878) (emphasis added). See also *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 258; 819 NW2d 68 (2012) ("A policy is void when there is not an insurable interest.").

Here, GEICO offered undisputed evidence showing that Yolanda was the sole titled owner and registrant of the Lumina when Marcus added it to his GEICO insurance policy in 2013. There is no evidence that Marcus had use of the vehicle in a manner that might have afforded him the status of an owner under MCL 500.3101(3)(*l*). Nor did he undertake a contractual obligation to obtain insurance or have any intention of acquiring the vehicle as was the case in *Universal Underwriters Group*, 246 Mich App at 730. In addition, Marcus had his own insurance and was not a member of Yolanda's household who could potentially turn to her insurance as resident relative under MCL 500.3114(1), so his interest in protecting his own health and well-being could not form the basis of an insurable interest in the Lumina. There is simply no evidence that Marcus had a recognized insurable interest, and Farmers has offered no argument as to what type of alternative interest Marcus may have had that would support the issuance of an insurance policy covering the Lumina. Because Marcus had no insurable interest, the policy was void with respect to the Lumina, *Morrison*, 286 Mich App at 572; *Corwin*, 296 Mich App at 258, 260, and the trial court erred by granting summary disposition in favor of Farmers because GEICO did not issue a valid policy from which Bracy could receive PIP benefits under MCL 500.3115(1).

## IV. CONCLUSION

In sum, we hold that the trial court erred by granting summary disposition in favor of Farmers because GEICO was not the insurer of the owner, registrant, or operator of the Lumina and, therefore, had no obligation to pay Bracy's PIP benefits under MCL 500.3115(1). Even if we were to conclude otherwise, we would still find error requiring reversal because Marcus lacked an insurable interest in the vehicle, rendering the policy void. Given our resolution of these issues, we need not address GEICO's remaining claims of error.

Reversed and remanded for entry of an order granting summary disposition in favor of GEICO. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Michael J. Kelly