# STATE OF MICHIGAN

# COURT OF APPEALS

GREGORY PERTTUNEN,

        Plaintiff-Appellant,

and

SHELLY HOLLOWAY,

        Plaintiff,

v

CITY OF LIVONIA,

        Defendant-Appellee.

UNPUBLISHED
March 13, 2018

No. 333014
Wayne Circuit Court
LC No. 14-007990-CD

GREGORY PERTTUNEN,

        Plaintiff-Appellee,

and

SHELLY HOLLOWAY,

        Plaintiff,

v

CITY OF LIVONIA,

        Defendant-Appellant.

No. 334594
Wayne Circuit Court
LC No. 14-007990-CD

Before: SAWYER, P.J., and MURRAY and STEPHENS, JJ.

PER CURIAM.

In this civil rights action, plaintiffs Gregory Perttunen (plaintiff) and Shelly Holloway (Holloway)[1] alleged that the defendant City of Livonia's Police Department (defendant) discriminated against them based on their gender. Plaintiff specifically pled that he was improperly disciplined by defendant as part of defendant's effort to use a male to shield against an anticipated gender discrimination lawsuit filed by Holloway. In docket number 333014, plaintiff appeals as of right the circuit court's order that granted defendant's motion for summary disposition of his gender discrimination claim. In docket number 334594, defendant appeals as of right the circuit court's order that denied defendant's motion for sanctions against plaintiff for filing a frivolous action. We affirm in both appeals.

The factual predicate of plaintiff's gender discrimination claim centers around defendant's investigation of an incident that occurred on June 7, 2011, that led to plaintiff and Holloway being disciplined, and a conversation heard by Sergeant and Union Representative Patrick Moug during the investigation where Captain Benjamin McDermott referred to plaintiff as "collateral damage." The incident, described as a "stand-by," was when Holloway and plaintiff were reported to have been parked behind a local business while on-duty for over an hour engaged in conversation. The incident was part of a more extensive investigation focused on Holloway and claims of her dereliction of duty. It also led to plaintiff being further investigated and called into a meeting with his supervisors to review his in-car video recordings that documented other periods of inactivity. Plaintiff claimed that after his meeting with supervisors about the stand-by, Moug told him, "McDermott stated they had to go after him to protect the Department from a lawsuit by Shelly Holloway" and that "[b]ecause Shelley [was] a female" the department was "going to have to investigate [plaintiff] because if" they did not, "her potential lawsuit down the road [would] look stronger."

On June 29, 2011, plaintiff submitted a letter to McDermott admitting with explanation to extensive periods of inactivity where he made himself unavailable during his patrol shift. Plaintiff later received a charging letter from Chief of Police Robert Stevenson wherein plaintiff was advised that he was found to be in violation of multiple department rules and regulations. Plaintiff initially wanted to have a "chief's hearing" where he could have explained his situation to Chief Stevenson. However, he testified that he was dissuaded from a hearing by Chief McDermott. According to plaintiff, McDermott pulled him into the lieutenant's office and told him, "Don't take this personal, it's all business" and "I'm not going to try to talk you out of a chief's hearing, but the chief has said he wants me to add up all your downtime and double it or you can take the five days." Thereafter, Moug also informed plaintiff that, "if he accepted five (5) days off they could be done with this." Thereafter, plaintiff sent Chief Stevenson a "Waiver of Chief Hearing." Notice of a five-day suspension from Chief Stevenson followed on July 25, 2011. Plaintiff served his suspension and retired soon thereafter. Three years later, he and Holloway filed this suit.[2] Defendant motioned for summary dismissal of the complaint. During

---

[1] Holloway settled her case with defendant and is not a party to this appeal.

[2] John Nolan was also an original complainant. His claims for wrongful termination and constructive discharge in violation of the Whistleblower's Protection Act were severed from this suit prior to defendant's motion.

discovery, McDermott acknowledged telling plaintiff that he was "collateral damage" but explained the statement to mean that, "[h]ad it not been for the investigation into Holloway, and the findings made in that investigation, [plaintiff's] misconduct would likely not have been discovered." Chief Stevenson also submitted an affidavit averring that he was the sole person responsible for plaintiff's discipline and that plaintiff's gender was never a consideration in his decision. The circuit court granted the motion as to plaintiff, but denied it as to Holloway. It held that plaintiff did not present evidence of direct discrimination, that the collateral damage testimony was inferential at best, and plaintiff failed to present evidence of similarly situated female employees. These issues form the basis of plaintiff's appeal in docket number 333014.

After its motion was granted against plaintiff, defendant filed a motion requesting sanctions arguing that plaintiff's gender discrimination claim was frivolous and devoid of arguable legal merit. The circuit court disagreed and denied the motion. That denial forms the basis of defendant's appeal in docket number 334594.

## I. SUMMARY DISPOSITION OF PLAINTIFF'S GENDER DISCRIMINATION CLAIM

### A. STANDARD OF REVIEW

Defendant requested summary disposition under MCR 2.116(C)(8) and (C)(10). The court did not state on the record, or in its order, under which subsection it granted summary disposition. We will review the court's decision under MCR 2.116(C)(10) because the court considered evidence outside the pleadings in deciding defendant's motion. See *Peters v Dept of Corr*, 215 Mich App 485, 487-488; 546 NW2d 668 (1996) ("A motion for summary disposition under MCR 2.116(C)(8) relies on the pleadings alone, . . .).

"We review a grant of summary disposition de novo." *Id*. at 486. "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "Affidavits, pleadings, depositions, admissions, and documentary evidence are considered in reviewing a motion for summary disposition pursuant to MCR 2.116(C)(10), and the evidence is viewed 'in the light most favorable to the party opposing the motion.' Summary disposition is proper under MCR 2.116(C)(10) if the documentary evidence shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Universal Underwriters Group v Allstate Ins Co*, 246 Mich App 713, 720; 635 NW2d 52 (2001) quoting *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "Circumstantial evidence may be sufficient to establish a case. However, parties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *Libralter Plastics, Inc v Chubb Group of Ins Companies*, 199 Mich App 482, 486; 502 NW2d 742 (1993) (internal citation omitted).

### B. ANALYSIS

In docket number 333014, plaintiff argues the circuit court erred in summarily dismissing his gender discrimination claim under the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*,[3] because he presented direct evidence of discrimination by defendant and defendant's administration that he was disciplined only to avoid the implications of a gender discrimination suit from Holloway.

The circuit court held:

> Plaintiff has not mete [sic] out a prima fascia [sic] case. First we do not have direct evidence of discrimination. The closest we come to it relate [sic] to the collateral damage issue. This evidence requires the fact finder to draw an inference of discriminatory intent regarding him. In other words, the relevancy of the comment is only provided by inference. And we refer you to the *Johnson versus Kroger*[4] case we talked about the other day.

*  *  *

> . . . Further, Plaintiff had not presented evidence that similarly situated females were treated differently. In fact, the comparable female, Plaintiff Holloway was more severely disciplined.

Michigan's Civil Rights Act prohibits an employer from doing any of the following:

> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status. [MCL 37.2202(1)(a)].

Discrimination under MCL 37.2202 may be shown through direct or indirect evidence. *Hazle v Ford Motor Co*, 464 Mich 456, 461-463; 628 NW2d 515 (2001). "[D]irect evidence" is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id*. at 462 (citation and quotation marks omitted). Such evidence "proves impermissible discriminatory bias without additional inference or presumption." *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 607 n 34; 886 NW2d 135 (2016). "Direct evidence of discrimination may consist of statements made by a decision maker which show an illegal motive for employment decisions." *Kresnak v City of Muskegon Hts*, 956 F Supp 1327, 1335 (WD Mich, 1997). On the other hand, "threats and intimidation by a person

---

[3] Defendant urges this Court to disregard a number of plaintiff's exhibits on appeal, specifically A through G, L and M. This Court's review is limited to evidence actually presented to the trial court at the time of its ruling on summary disposition. *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009). As a result, we did not consider exhibits A, B, E through G, L and M. Other exhibits not mentioned were presented to the court by defendant.

[4] *Johnson v Kroger Co*, 319 F3d 858, 865 (CA 6, 2003).

who is not in a position to make the relevant employment decision is not direct evidence of discrimination." *Id.*

In the absence of direct evidence of discrimination under the ELCRA, a plaintiff "must then proceed through the familiar steps set forth in *McDonnell Douglas*. The *McDonnell Douglas* approach allows a plaintiff to 'present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination.' "[5] *Hazle*, 464 Mich at 462, quoting *DeBrow v Century 21 Great Lakes, Inc*, 463 Mich 534, 537-538; 620 NW2d 836 (2001) (emphasis in original). To establish a prima facie case of discrimination under the *McDonnell Douglas* approach, a plaintiff must show he was "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." *Town v Michigan Bell Tel Co*, 455 Mich 688, 695; 568 NW2d 64 (1997). "If a plaintiff establishes a prima facie case of discrimination based on either age or sex, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action taken." *Major v Village of Newberry*, 316 Mich App 527, 541; 892 NW2d 402 (2016). A plaintiff, in turn, must show that the defendant's reasons are really pretext for discrimination. *Hazle*, 464 Mich. at 465–466.

> A plaintiff can establish that a defendant's articulated legitimate, nondiscriminatory reasons are pretexts (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. [*Feick v Monroe Co*, 229 Mich App 335, 343; 582 NW2d 207 (1998).]

"Under either the direct evidence test or the *McDonnell Douglas* test, a plaintiff must establish a causal link between the discriminatory animus and the adverse employment decision." *Sniecinski v Blue Cross & Blue Shield of Michigan*, 469 Mich 124, 134-135; 666 NW2d 186 (2003).

Plaintiff argues that the statements made by Moug and McDermott about his discipline being collateral damage were direct evidence of discrimination by defendant's police department because the statements showed that plaintiff was singled out and treated adversely on account of his gender and constituted admissions against interest. We disagree.

First, the record gives way to multiple interpretations of the meaning of "collateral damage." Moug understood the phrase to mean that defendant had to discipline plaintiff to weaken a future claim of gender discrimination by Holloway. Plaintiff interpreted the phrase as meaning that he was only investigated and disciplined to cover-up defendant's discriminatory conduct toward Holloway. McDermott testified that he meant the exposure of plaintiff's inactivity that led to subsequent discipline was a collateral consequence of the investigation into

---

[5] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

Holloway's dereliction. Under these circumstances, we cannot attach one meaning to the phrase to find that it was direct evidence of discrimination.

Second, the discriminatory intent cannot be attributed to the person responsible for plaintiff's discipline. "[T]he ultimate factual inquiry in any discrimination case is whether unlawful discrimination was a motivating factor in the employer's decision." *Hazle*, 464 Mich at 470. Chief Stevenson was the ultimate decision-maker and therefore, the person responsible to decide whether plaintiff would be disciplined and what that discipline would look like. Chief Stevenson indicated in plaintiff's formal charge letter, that his decision to charge plaintiff was based on the investigation into plaintiff's periods of inactivity and plaintiff's June 29, 2011 statement. In plaintiff's suspension letter, Chief Stevenson indicated that his determination that plaintiff be suspended was based on a review of the incident, plaintiff's correspondence in which he admitted rule infractions and plaintiff's choice to not have a chief's hearing. On this record, it takes an inference to conclude that plaintiff was disciplined based on his gender because Chief Stevenson did not mention plaintiff's gender as the reason for his discipline. In other terms, McDermott's statement, even if believed, does not require the conclusion that unlawful discrimination was a motivating factor in Chief Stevenson's actions. *Hazle*, 464 Mich at 461-463. Further shown is that McDermott was not the person in a position to make the relevant employment decision. *Kresnak*, 956 F Supp at 1335.

Even still, plaintiff argues a "cat's paw" theory, whereby he contends, defendant "may be liable for the acts of a biased subordinate," here, McDermott, "even if that subordinate is not the formal decisionmaker."[6] *EEOC v BCI Coca-Cola Bottling Co of Los Angeles*, 450 F3d 476, 482 (CA 10, 2006). The theory has not been formally adopted by the courts of this State and fails for that reason alone. Even with the application of "cat's paw" however, plaintiff fails to show, as required, that McDermott "played a meaningful role in the decision" to discipline plaintiff. *Ercegovich v Goodyear Tire & Rubber Co*, 154 F3d 344, 354-355 (CA 6, 1998). The record shows that McDermott was only charged with the initial investigations of Holloway, plaintiff, Zoski and Keon, and with reporting the results to Chief Stevenson while Chief Stevenson determined whether plaintiff would be disciplined. This record corroborates Chief Stevenson's affidavit that while others gathered information about plaintiff's conduct, it was his decision alone to determine if any discipline would occur, and that plaintiff's gender played no role whatsoever in his decision to discipline. There is otherwise no evidence that McDermott met with Chief Stevenson regarding plaintiff's discipline, gave recommendations as to discipline, or sent correspondence regarding discipline.

Plaintiff offers no complementary claim that Moug's and McDermott's statements were indirect evidence of discrimination. The oversight of not including this analysis also means plaintiff fails to rebut defendant's articulated nondiscriminatory reason for its decision to

---

[6] "In the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *EEOC v BCI Coca-Cola Bottling Co of Los Angeles*, 450 F3d 476, 484 (CA 10, 2006).

discipline plaintiff. *Feick*, 229 Mich App at 343. Plaintiff's gender discrimination claim fails for a want of evidence of discriminatory intent attributable to the decision-maker in this case and for failure to rebut defendant's business judgment.

Plaintiff's statement of questions presented states that the circuit court also erred in granting defendant summary disposition on plaintiff's public policy claim however, plaintiff fails to brief or even mention this issue in his argument section. The issue is therefore abandoned. See *In re JS & SM*, 231 Mich App 92, 98; 585 NW2d 326 (1998) ("The failure to brief the merits of an allegation of error is deemed an abandonment of an issue.").

Plaintiff also contends that the court erred in denying him an adverse inference jury instruction, M Civ JI 6.01, regarding his lost performance records. We decline to address this issue because it was not stated in plaintiff's statement of questions presented. *Albers*, 258 Mich App at 584. We also consider this issue abandoned because, while plaintiff states the correct law, there is no application of the law to the facts of his case.[7]

## II. SANCTIONS

### A. STANDARD OF REVIEW

"This Court reviews a trial court's decision to deny sanctions for clear error." *Robert A Hansen Family Tr v FGH Indus, LLC*, 279 Mich App 468, 485; 760 NW2d 526 (2008). "A decision is clearly erroneous when, although there may be evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *Guerrero v Smith*, 280 Mich App 647, 677; 761 NW2d 723 (2008).

### B. ANALYSIS

In docket number 334594, defendant argues that the circuit court erred in denying it sanctions under MCR 2.114 and MCL 600.2591, because plaintiff's claim was devoid of arguable legal merit and frivolous. Again, we disagree.

"Our Supreme Court and our Legislature have sought to deter attorneys and parties from advancing frivolous legal claims, defenses, and documents, without stifling their good-faith efforts at pursuing novel or arguable legal theories. To achieve this balance, the Supreme Court has adopted MCR 2.114, and the Legislature has enacted M.C.L. § 600.2591." *FMB-First Mich Bank v Bailey*, 232 Mich App 711, 719; 591 NW2d 676 (1998).

"If a party is represented by an attorney, the attorney has an affirmative duty to conduct a reasonable inquiry into the factual and legal viability of a pleading before it is signed." *Cvengros v Farm Bureau Ins*, 216 Mich App 261, 266; 548 NW2d 698 (1996) citing MCR 2.114(D). Under MCR 2.114, an attorney's signature on a document submitted to the court

---

[7] See *Etefia v Credit Technologies, Inc*, 245 Mich App 466, 471; 628 NW2d 577 (2001) ("Insufficiently briefed issues are deemed abandoned on appeal.").

certifies that the document is "well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law ..." MCR 2.114(D)(2). "If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction . . ." MCR 2.114(E). The court rule also provides for sanctions when a party pleads a frivolous claim or defense. MCR 2.114(F). Under MCL 600.2951, "if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney." MCL 600.2591(1). "Whether a claim is frivolous within the meaning of MCR 2.114(F) and M.C.L. § 600.2591 depends on the facts of the case." *Kitchen v Kitchen*, 465 Mich 654, 662; 641 NW2d 245 (2002). According to MCL 600.2591(3), an action is frivolous if at least one of the following conditions is met:

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (*iii*) The party's legal position was devoid of arguable legal merit. [MCL 600.2591(3)(*i*)-(*iii*)].

In this case, the court determined that plaintiff's discrimination claim was not frivolous. It held:

> I disagree. Looking at the circumstances here this was not a frivolous case and was not brought in bad faith considering the significant testimony relating to the collateral-damage issue. For those reasons then the motion is denied.

Defendant contends that the court's holding did not consider defendant's additional arguments that the collateral damage statement did not give rise to a claim in law and that there was no argument for an extension or modification of the law. After a review of the record, we conclude otherwise. The court's ruling, while brief, sufficiently addressed aspects of both the statute and court rule, although the court was not required to address every point of contention raised by defendant. This Court presumes that the circuit court knows the law, *People v Alexander*, 234 Mich App 665, 675; 599 NW2d 749 (1999), therefore, the Court is satisfied that the circuit court's determination that plaintiff's action was not frivolous included consideration of the meaning of frivolous under MCL 600.2591. Similarly, that the court's finding that plaintiff did not file his action in bad faith meant that it did not find that the action was brought to harass, injure or embarrass defendant. Further, its focus on the collateral-damage testimony under MCR 2.114(D)(2), evidenced that it believed plaintiff's action was well-grounded in fact.

"To determine whether sanctions are appropriate under MCL 600.2591[,] ... it is necessary to evaluate [a] claim at the time the lawsuit was filed." *In re Attorney Fees & Costs*, 233 Mich App 694, 702; 593 NW2d 589 (1999). At the time of the filing of the complaint, nearly three years had passed since plaintiff and Holloway retired. Plaintiff knew from Moug

that Captain McDermott said the investigation into plaintiff's inactivity was "to protect the Department from a lawsuit by Shelley Holloway." According to plaintiff, Captain McDermott later confirmed what Moug had said when he told plaintiff he "was simply 'collateral damage' " "that the standby with Holloway made them look at" him and "it was 'nothing personal.' " Further, Moug told plaintiff that if he accepted the five-day suspension "they could be done with this per McDermott." Given this evidence, plaintiff had a reasonable basis to believe that he was disciplined because he was a male and it was necessary to discipline a male to cover-up discrimination against a woman. Plaintiff's position was not devoid of arguable legal merit, as defendant argues, because the ELCRA prohibits using gender as a basis to discriminate against a person. MCL 37.2202(a).

Defendant argues that the references in the complaint to other lawsuits that were successfully prosecuted against the defendant supports his argument the complaint was filed to harass defendant. We disagree.

Affirmed.

/s/ David H. Sawyer
/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens